(No. 11067.—Judgment affirmed.)
EDWARD SCHMIDT, Exr., Appellee, *vs.* MARY BAUER-
MEISTER *et al.* Appellants.

*Opinion filed June 21, 1917—Rehearing denied October 5, 1917.*

1. WILLS—*there is no presumption of law as to circumstances of mutilation of a will.* Alterations, erasures and markings in a will do not furnish any presumption, in law, as to the circumstances or the time of the mutilation, but they may be·of such nature as to call for explanation on the part of the chief beneficiary when the will is offered for probate, and without some explanation an inference against the will may be justified.

2. SAME—*when unauthenticated alterations will be disregarded.* Pencil erasures and alterations in a will made by the testator without new attestation will be disregarded by the court and the will as originally drawn, if legible after the attempted alteration, may be admitted to probate where there is no question as to its validity and authenticity.

APPEAL from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

KELLY & ORR, (PAUL E. PRUTSMAN, of counsel,) for appellants.

ALBERT H. KRUSEMARK, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal to review the judgment of the circuit court of Will county admitting to probate the last will and testament of Wilhelmine Schmidt, who died near the village of Goodnow, in said county, September 1, 1915. The petition was filed by appellee, Edward Schmidt, who was nominated in the will as executor. Appellants, Mary Bauermeister, Mathilda Fedeler and Anna Schmidt, daughters of the testatrix, and Rosalinda Fedeler, daughter of Mathilda Fedeler, were made parties to the proceeding. Appellant Anna Schmidt being insane was represented by the Joliet Trust and Savings Bank as conservator. The county court

denied the probate of the will.   On appeal to the circuit
court Pence B. Orr was appointed guardian *ad litem* for
Anna Schmidt, and the circuit court entered an order ad-
mitting the will to probate but denied probate of certain
alleged codicils attached to the will.

As appears from the record, testatrix was born in Ger-
many, came to this country about 1852 and was near eighty
years of age at the time of her death.   She was the mother
of appellee, and he and her said three daughters were her
only children and heirs-at-law.   Appellee lived alone with
the testatrix on the farm from the death of her husband,
in 1904, except for occasional visits from her daughters.
Anna Schmidt at the time of the hearing, and for several
years prior thereto, was in the Kankakee State Hospital for
the Insane.   On March 12, 1904, testatrix went to Joliet to
the office of Stassen & Stassen, who were engaged in the
real estate and insurance business, and executed the will
in question, which was duly witnessed by Tresa Metzger,
Menno H. Stassen and Henry Stassen.   The first clause of
the will recites that Mary Bauermeister and Mathilda Fed-
eler had been financially aided by the testatrix and her hus-
band to the extent their means and circumstances would
permit and that Anna Schmidt is mentally deranged and un-
able to take care of herself; that her son, Edward Schmidt,
has proven himself to be a dutiful son and had worked for
them all the time that he had been able to work, and that
she deemed it incumbent upon her to protect and look after
the sustenance of her daughter Anna and to partially com-
pensate her son for his love and fidelity.   By the second
clause of the will the testatrix, after providing for the pay-
ment of her debts and funeral expenses, bequeathed the sum
of five dollars to Mary Bauermeister, stating that she con-
sidered that sum, together with the assistance she had al-
ready received, to be fair and equitable to her.   By the
third clause she devised to her daughter Mathilda Fedeler,
for life, 60 acres of land with remainder in fee to Rosa-

linda Fedeler. By the fourth clause she devised to her son, Edward, 160 acres of land upon the following conditions: (1) That he board, clothe, keep, nurture and maintain her daughter Anna Schmidt during her natural life, in such a manner as is meet and proper in her station in life; (2) that he furnish her all wood and coal she may need for fuel, and if wood, to be cut in proper stove lengths, split for use and delivered to her door; (3) that Anna is to have the right and privilege to occupy the living room, located in the southeast part of the main building, and also the flower room, and pantries and closets connected therewith and located on the ground floor, and also the southwest corner room up-stairs theretofore occupied by Anna, and the southeast corner room up-stairs, and the free use of all halls and stairways and doors connected with said room; (4) that Anna is to have one-half of all the fruit, apples, pears, plums, strawberries, gooseberries, blackberries and grapes grown on said premises; (5) that in a reasonable way he shall furnish Anna with conveyance to church and elsewhere she may desire to go; (6) that she is to have free and unmolested ingress and egress to and from the farm herein devised to Edward; (7) that he is to pay annually to Anna during her natural life the sum of $30, in such sums and at such times as needed; (8) that in case circumstances should so change in the family affairs of Edward or in the physical or mental condition of Anna as to make it improper or impossible for the two to live together, then in such case "my son or his heirs, in lieu of the above provisions, shall pay my said daughter Anna Schmidt, annually, in each and every year, the sum of one hundred and eighty ($180) dollars, in such amounts" and at such times as it may be needed for her support and maintenance, which is made a first lien on the said premises during the life of Anna; and (9) that in case Edward should die, leaving no bodily issue, before the death of Anna, then said premises shall be equally divided between her two daughters Ma-

thilda Fedeler and Anna Schmidt, share and share alike, with the requirement that they pay her daughter Mary the sum of five dollars. By the fifth clause of the will she devised to her daughter Anna, in addition to said provisions in clause 4, 40 acres of land, to have and to hold during her natural life, and, if her needs require it, "sell as much thereof as is necessary for her sustenance," all unsold or unused part thereof after Anna's death "shall belong to my son, Edward Schmidt, for him and his heirs, to have and to hold forevermore, provided, however, that in case my said daughter Anna Schmidt shall recover her mental faculties and become fully cured of her debility," in such case the said 40-acre tract is to be held by Anna and her heirs forever. By the sixth clause she bequeathed to Edward all the rest, residue and remainder of her estate, real and personal, to him and his heirs forever, except the household goods and furniture "found in the rooms assigned to my said daughter Anna in section 3, paragraph 4, of this will," which she gives and bequeaths to her daughter Anna.

That portion of the eighth provision of the fourth clause of the will that is set out above within the quotation marks has a straight line drawn across each word of the quotation with a lead pencil, but the words in that quotation are all legible. There are also pencil marks across the words "south" and "part," leaving the word "east" between them untouched, and also across the word "south" preceding the words "east corner," in the third provision of the fourth clause of the will. Pencil marks are also drawn across the word "sell," in the fifth provision of said clause of the will. But the whole will as originally written is plainly legible, notwithstanding the marks thereon. At the foot of the original will, just after the last name on the attestation clause, an unattested codicil is written in German and signed by Wilhelmine Schmidt, the translation of which is the following: "I add to this that Edward Schmidt has not received any wages as long as he worked for me because he

received the land. Anna Schmidt can give her property to whoever she wishes if she does not complain about Edward Schmidt." Following the above German words, and apparently as a part of that codicil, the following typewritten words appear in English: "Whereas I, Wilhelmine Schmidt, did on the twelfth day of March, A. D. 1904, make my last will and testament, I do now by this writing add this codicil to my said will to be taken as a part thereof." The signature of the testatrix appears just after the typewritten matter, and this codicil was written on a separate sheet and pasted at the foot of the will, following the attestation clause. Two other sheets of paper were attached to the will by pins, upon which were written two other statements or unwitnessed codicils in German and signed by testatrix. Those statements read as follows: "I add to this that if Edward Schmidt does not give Anna Schmidt the things that I have willed her she can do with her property as she pleases. If Edward Anna Mathilda Maria brings any bills against my estate they can get nothing as they have no claim no loan of any kind against me. Edward worked for me and the money that he made he kept anything that I needed he bought and paid for. If Anna Schmidt sues Edward Schmidt on account of him not giving her the things that I have willed her, Edward must pay the costs. Edward must pay funeral expenses and care for Anna Schmidt as well as he care for himself." "Anna Schmidt has the land as long as she lives and at her death it goes to Edward Schmidt she has the right to rent the same as long as she lives. Edward need not give her anything until she gets well and comes back home to Edward Schmidt and I hope that you will get along good together that is my wish. Take care of Anna as he cares for himself, pay the funeral expenses of father and mother and Anna no one can claim more than I have written in my will."

The contention of appellants is that the will had been materially altered, obliterated and mutilated since its exe-

cution, and that suspicion pointed toward appellee, the chief beneficiary. There is just one suspicious fact pointed to by appellants touching the question of the identity of the alleged codicils. The paper with the typewritten matter that was pasted onto the foot of the will was apparently cut off with scissors very close to and under the signature of the testatrix. A part of the German "h" in the word "Wilhelmine" and of the "h" in the word "Schmidt" is cut off, leaving some ground for the contention that the codicil might have been witnessed below her signature and the attestation cut off. The codicil was evidently written after the paper was pasted on the will, as a number of the letters in the first line of German thereon extend above the pasted slip and onto the last sheet of the will on which it is pasted. In connection with this fact, and giving further weight to the contention of appellants, is the further fact of the pencil marks drawn across the quoted words in the eighth provision in the fourth clause of the will, and the pencil mark across the word "sell" in the fifth clause of the will. These facts are such as to call for explanation on the part of appellee, the chief beneficiary under the will, and in whose possession the will was found at the time it was offered for probate. These facts do not, in law, furnish any presumption as to when the alterations were made, or by whom or with what intent they were made. Although an inspection of the instrument itself may throw distrust or suspicion upon it, the question is one of fact and not of law. The appearance and circumstances may be such that the court or jury, considering the question as one of fact, would require an explanation, and without it an inference against the instrument might be justified. *Webster* v. *Yorty,* 194 Ill. 408; *Catlin Coal Co.* v. *Lloyd,* 180 id. 398.

The evidence in this case sustains the findings of the court that the alterations, erasures and mutilations on the will and codicil were made by the testatrix. The evidence of appellee, as testified to by himself and by Henry Ober-

loh, a brother of testatrix, discloses that she kept the will in her possession continually from the time of its execution until her death; that she kept it in a small tin box, locked, with the key tied to the box, and that the box was hung on a nail in an up-stairs room, where appellee found it some four or five days after her death, under some of her clothing. Oberloh also testified that she told him in haying time, the year before she died, that she had made a will, and that as things occurred to her she had added other things in German, but did not tell him what she wrote; that she went up-stairs and showed him where her clothes were hanging and told him that the will was among her clothes in that room; that she asked him if the German writing on the will would be all right and wanted him to explain it to the court in English; that about that time Edward came to the house and she ceased to talk about the will and that he did not talk to her further about it. He also testified that she could read English. H. F. Bahlman, supervisor of the town of Washington, testified that he was well acquainted with the testatrix; that she had a conversation with him about a year before she died and asked him if he thought it was legal to write something in a will in German, and that he told her it was. Appellee testified that he did not know where she kept the will and that he hunted for it for about four or five days after her death and found it locked up in the tin box, sealed up in an envelope, and that the key to the box was hanging by the box on a string; that the very first thing he did after finding it was to put it back in the box until he could take it to A. H. Krusemark, his attorney; that his mother always kept the room locked where the will was; that about fourteen days afterwards he carried it to his attorney, sealed up in the envelope, which was one of Henry Stassen's envelopes with his name on the outside of it; that he did not know what was in the envelope but that his mother had told him that the will was in an envelope. Albert H. Krusemark, his attorney,

testified that he remembered appellee bringing to him the will, and that it was in a sealed envelope which had printed on it in one corner, in large type, the name of Stassen; that he went with appellee to the probate court and handed it to King, the deputy clerk, and asked him to open it; that King tore open the envelope, took out the will, and that it had attached to it the papers on which were written in German the said codicils. King corroborates in most part Krusemark's testimony but does not remember whether the envelope was sealed or not.

The will was drawn on a blank form will and was partly printed and partly typewritten by Miss Tresa Metzger, a stenographer in Stassen & Stassen's office. Both the Stassens are dead and their testimony could not be obtained. The original will, together with the purported codicils, was certified to this court as original evidence. The typewritten matter on the original will is in purple ink and the typewriting thereon appears to be skillfully done. The typewritten matter appears to have been written on the same typewriter that wrote the matter that appears on the sheet attached to the will but by a person less skilled in the use of a typewriter. The typewritten matter on the pasted sheet was written on common typewriting paper, some of the letters being made with a heavier stroke than others but printed in the same colored ink as used on the original will, and the letters in both instruments bear a striking similarity. The letter "k" in both the original will and the purported codicil extends slightly below the other letters wherever it occurs, showing that letter was out of alignment with the other letters on the machine. The striking similarity in the writing in the foregoing particulars in the typewritten matter in the original will and the purported codicils indicates that the instruments were written on the same machine. It does not appear from the evidence that any living person knows who did the typewriting on the pasted sheet. It is not improbable that testatrix went to

the Stassens before their death and had them prepare the beginning of a codicil with a view to her making some additions to the will, and that she undertook to add a codicil without having the same properly attested. The evidence also discloses that Anna Schmidt had been in the hospital at Kankakee for ten years or more at the time the evidence was taken in this case, and the deceased no doubt came to the conclusion that she was hopelessly and permanently insane. The attempted alterations on the will and the addition of the codicils bear such a close relation to each other as to warrant the conclusion, after considering the whole of the evidence, that the testatrix drew the pencil marks across the words in the will as well as wrote the purported codicils, and that she intended the one to become effective upon the taking effect of the other.

The doctrine announced in Redfield on Wills and approved by this court in *Wolf* v. *Bollinger,* 62 Ill. 368, and *Hesterberg* v. *Clark,* 166 id. 241, is applicable here, that "when the testator makes an alteration in his will by erasure and interlineation, or in any other mode, without authenticating such alteration by a new attestation in the presence of witnesses or other form required by the statute, it is presumed that the erasure was intended to be dependent upon the alteration going into effect as a substitute, and such alteration not being so made as to take effect, the will therefore stands, in legal force, the same as it did before, so far as it is legible after the attempted alteration." As the entire will is readable the pencil marks were properly disregarded by the court as well as the codicils, and the will as originally drawn was properly admitted to probate.

There is no question concerning the validity and authenticity of the original will as originally executed, and it is admitted that the codicils cannot be properly probated as a part of the will.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*