(No. 12177.—Decree affirmed.)

Evaline V. Dowling *et al. vs.* Ella E. M. Gilliland *et al.*
Appellees.—(Henrietta H. Guinness, Appellant.)

*Opinion filed February 20, 1919.*

1. Wills—*what is necessary to revocation of will by cancellation.* In order to constitute the revocation of a will by cancellation such cancellation must be a blotting or striking out or writing over the will or an essential portion thereof and must be made with intent to revoke the will.

2. Same—*a will is not canceled by merely writing upon it.* Merely writing upon a will in blank spaces, without physically obliterating or striking out any of the words of 'the will, is insufficient to work a destruction of the will by cancellation, even though the notation may express an intention to revoke and cancel.

3. Same—*when writing on will is not a revocation.* A notation upon a will to the effect that the will is no good and that the testator has changed his mind cannot be held effective as a written revocation of the will where the notation is unsigned and unattested.

Appeal from the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding.

Frederick Sass, for appellant.

Jonas O. Hoover, for appellee Ella E. M. Gilliland.

Mr. Justice Stone delivered the opinion of the court:

This is an appeal by Henrietta H. Guinness from the decree of the circuit court of Cook county sustaining the will of Lavinus B. Willden after a hearing before a jury upon bill filed by contestants to contest said will on the ground that it had been revoked by the testator.

The testator, Lavinus B. Willden, executed the will in question August 24, 1894, by which he devised and bequeathed all of his property to his sister Ella E. M. Gilliland and his half-brother, Lewis C. E. Lateer, share and share alike, and provided that Lateer should be the execu-

tor thereof. Some time thereafter there was written on the back of the will, which consisted of a single sheet of paper: "All I have I want to go to my sister, Miss Ella Willden." This notation is not dated. There also appears on the back of the will the following notation: "This is no good; will try to make another.—December 10, 1906." No signature of the testator appears in connection with either of the foregoing notations. There also appears on the face of the instrument, between the date and the attestation clause, the following: "Not any good.—December 11, 1907," and between the date and the original signature, "Changed my mind." No signature of the testator appears in connection with these notations. Uncontradicted, extraneous evidence, over objections of appellees, was introduced at the trial to the effect that all of said notations were in the handwriting of the deceased. The words and figures "December 11, 1907," are so indorsed that the "1" in units order in the number "11" is tangent to the letter "S" in the word "Signed," and the "9" in hundreds order in the number "1907" is tangent to the letter "d" in the word "Signed," and the "7" in units order in the number "1907" intersects one line in the letter "s" in the word "sealed," both words, "Signed" and "sealed," being a part of the attestation clause. None of the letters or words of the will or attestation clause were marked out, crossed out, obliterated or written across by the said notation.

The evidence is conflicting as to the time and the place in which the will was found. Immediately after the death of the testator a search began for his will. At the time of his death he was constructing and had practically completed a small cottage or dwelling house. During the construction of this cottage he occupied a portion of a barn on the premises for sleeping purposes and a place in which to keep his linen and other personal effects. A brief search at this place was made but no will was found. A search

was then made in a safety deposit ·box at the bank, rented by the testator, but no will was contained therein. Erastus M. Willden, administrator with will annexed, (one of the appellees herein,) continued the search, and eventually found the will, enclosed in an envelope, in the trunk of the testator in this room in the barn. The testimony is conflicting as to when he found the will. At the time he found it the envelope which contained the will was open at one end. There were letters of· little importance and some other papers in this trunk. There is some testimony to the effect that an ·abstract was among the papers found in the trunk with the will. Erastus M. Willden delivered the envelope and will to the attorney for the appellee Ella E. M. Gilliland, upon whose petition it was admitted to probate on April 29, 1914. The executor named in the will, Lewis C. E. Lateer, renounced, and Erastus M. Will-den was appointed administrator with the will annexed.

The testimony tends to prove that the deceased and his sister Ella E. M. Gilliland thought a great deal of each other and until her marriage they occupied the same home, and that he on several occasions expressed himself to the effect that he wanted all his property to go to this sister. He died June 17, 1911, leaving him surviving his brother, Erastus E. M. Willden; his sisters, Ella E. M. Gilliland, Henrietta H. Guinness and Evaline V. Dowling; his niece, Ruth E. Willden; and his half-brother, Lewis C. E. Lateer, his only heirs-at-law. He died seized in fee simple of certain real estate in Cook county.

The principal question involved in this case is whether or not there was a cancellation of the will. The record shows that there appeared on the face of the will this notation: "Not any good; changed my mind.—December 11, 1907." There was evidence in the record to the effect that this was in the handwriting of the testator, and it is contended on the part of the appellant that this shows an intent to revoke and cancel the will and that it also shows

actual cancellation of the same; that it is a cancellation irrespective of any crossing of lines of the words of the will, and that if the crossing of lines is necessary to cancellation, the slightest crossing is sufficient. Appellees contend that even though the notations were in the handwriting of the testator and show an intention on his part to cancel and revoke the will, yet such acts were not sufficient to constitute a revocation by cancellation.

Section 17 of the statute in relation to wills in this State is as follows: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence, and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." The statute thus provides for the revocation of wills by burning, canceling, tearing or obliterating, or by certain words which shall be written in the form of a new will, which, if written upon the instrument, must be signed by the testator in the presence of two or more witnesses and by them attested in his presence. It further provides that no will shall be revoked in any other way, and that no words spoken shall constitute a revocation or annulment of any will or testament or codicil. Does the writing of said words on the face of the will in the manner referred to constitute a cancellation of the will? As we have seen, there was no striking out of any of the words of the will by the notation in question, and only in the instances cited does the notation touch any of the words of the will. The Standard Dictionary defines "cancel" as follows: "To mark out or cut off, as by the drawing of some letters across to signify that it is to be omitted; to blot or strike out, as to cancel figures or writing." Can-

cellation has been also defined as the act of crossing out a writing. (6 Cyc. 281.) Cancellation of an instrument, by most approved lexicographers, is defined to be a blotting out or striking out, and has to do, necessarily, with the writing on the instrument. It could not be said that a will is canceled in the slightest degree by reason of marks or scratches made upon blank places on the will. In order to effect a cancellation there must be an erasure, blotting or striking out of some portion of the will itself. (1 Redfield on Wills,—4th ed.—138.) A writing upon the face of the will which does not appear to be written across the language of the will merely amounts to an unattested instrument or revocation and is inoperative. (Gardner on Wills, 259.)

*In re Akers,* 77 N. Y. Supp. 643, was a case similar in point of fact to the case at bar. In that case the testator appeared to have written on the blank marginal space on the first page of the will the words, "This will and codicil is revoked.—Jany. 14/96," and under this line was the signature of the testator, "Fredk Akers." It appeared that none of the words or the signature were written across the writing of the will, nor did they come in contact with said writing except that a small portion of some of the letters in the word "Fredk" crossed over the lower extremities of some of the letters on the third line. The words were not, however, obliterated. In that case the court found that the testator had evidently sought to revoke his will by writing, but as he had done no act except to express his intention upon the margin of the paper upon which the will was written, it was held that such act did not amount to a revocation of the will in writing, and that there could be no such thing as a cancellation of an instrument, either as a physical fact or in legal effect unless the instrument itself is in some form defaced or obliterated.

But appellant relies upon the case of *Warner* v. *Warner's Estate,* 37 Vt. 356. In that case the will was written on a sheet of foolscap paper covering the first page and

about one-third of the second page. On the last half of the second page was written: "This will is hereby canceled and annulled in full this 15th day of March, in the year 1859." Signed, "I. Warner." The court in that case held that such amounted to a cancellation. We do not adopt the view of the Vermont court in relation to the cancellation of wills, but hold it to be the rule that in order to constitute a revocation by cancellation such cancellation must be a blotting or striking out, or writing over said will or an essential portion thereof, and must be made with intent to revoke the will.

The great weight of authority is to the effect that the mere writing upon a will which does not in anywise physically obliterate or cancel the same is insufficient to work a destruction of a will by cancellation, even though the writing may express an intention to revoke and cancel. This appears to be the better rule. To hold otherwise would be to give to words written in pencil and not attested to by witnesses nor executed in the manner provided by the statute the same effect as though they had been so attested. Where such notation does not in any way obliterate the writing of the will it cannot be said to cancel, and therefore such notation could only be held effective as a revocation of the will as a writing. As this notation is unsigned and unattested it does not comply with the statute in relation to the signing and attesting of a revocation of a will as set out in said section 17 of the act relating to wills. We are of the view, therefore, that the testator did not effectually cancel his will, and that there was no revocation of it in writing, as required by the statute.

There are objections offered as to the admissibility of testimony, but we find no reversible error therein. Likewise the instructions given by the court and objected to by appellant, as well as those offered and refused by the court, appear to have been a fair presentation of the theories of appellant and appellees as to the law. The circuit

court in its instructions to the jury adopted the theory of the appellees, which, as we have seen, was the correct one.

There being no reversible error in the record the decree of the circuit court will be affirmed.

*Decree affirmed.*