(No. 19302.—)

WALTER MARTIN *et al.* Appellants, *vs.* FLORENCE MARTIN *et al.* Appellees.

*Opinion filed February 20, 1929.*

CUTTING, MOORE & SIDLEY, (CHARLES S. CUTTING, of counsel,) for appellants.

LOUIS J. BEHAN, and WILLIAM J. CORRIGAN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants seek review of the order of the circuit court of Cook county denying probate of the last will and testament of Ellen Martin, made and executed on the 8th day of June, 1927. Ellen Martin at that time was confined to her bed and died on July 1, 1927. The ground upon which probate of the will was denied was that of unexplained alterations appearing on the face of the will. The will consists of one bound document of four pages in typewriting and script and one small sheet of paper in script attached by a paper clip. It was prepared partly in typewriting previous to the date of its execution and partly at the home of Ellen Martin by Eugene J. Holland, admitted to practice law. It was signed by Ellen Martin in the presence of two witnesses, Walter W. Fulton and Thomas B. Brown, both of whom testified to their signatures to the will and

that at the time of the execution thereof they believed Ellen Martin to be of sound mind. One of the witnesses, Brown, testified that he did not know anything about whether there were any interlineations or changes on the will at the time he signed it. He testified, however, that he did sign the instrument offered for probate as the will, and the effect of his testimony is that the execution of the will and his attestation thereto were in due form as required by statute. The witness Fulton testified that he noticed particularly that there was writing—interlineations and notations—on the face of the will before he signed it. After the execution of the will it was taken away by Holland, who was named therein as executor, and kept by him until the death of the testatrix, when he filed a petition in the probate court of Cook county for the probate of the will and for letters testamentary to himself. On objection that the interlineations and erasures appearing on the face of the will were of a character requiring explanation, and it appearing that but one of the witnesses to the will testified concerning the existence of interlineations, the probate court denied probate of the will on the ground that interlineations and changes could not be explained by anyone in that court except the subscribing witnesses. After the probate judge had indicated that probate of the will would be denied Holland renounced his right as executor and declined to qualify in order that he might become a witness, and on appeal in the circuit court his testimony was heard over objection. At the close of the hearing in the circuit court the chancellor struck out the testimony of Holland and again refused probate of the will.

The following is a copy of the will, omitting the caption, the portion appearing in regular type being the type-written body of the will, the part printed in small capitals consists of words written in in script to fill blank spaces in the will, and the portion appearing in italics is that inserted in script but not for the purpose of filling blanks:

I, Ellen Martin of Chicago, Cook county, Illinois, hereby make, publish and declare the following writing to be my Last Will and Testament, hereby revoking all other Wills heretofore made by me.

*First:* It is my will that my just debts, funeral testamentary expenses shall be paid by my Executor, who shall also expend —$500— dollars for the purpose of having masses said for the repose of my soul and a reasonable amount for a marker for my grave and perpetual care.

*Second:* I give, devise and bequeath to my sons, JAMES and WALTER, or the survivor of them, share and share alike, provided they shall pay all my funeral expenses, the premises known as No. 8204 South Peoria Street. Chicago, Illinois, and legally described as follows: ~~LOTS 13 AND 14 BLK. 1 THOMSONS SUB SUB LOT 27 SB 6 BLK 24~~ LOT 2 BLK 14 CHESTER HIGHLANDS 3RD ADD TO AUBURN PARK 32-38-14.

*Third:* I give, devise and bequeath to ——MARGARET MARTIN—— and ~~his~~ *er* successors as hereinafter set forth the following described property, to-wit: 3633 EMERALD AVE CHICAGO ILLINOIS LOT 27 SB 6 BLK 24 HAMBURGS SUB CANAL TRUSTEES SUB 33-39-14

To have and to hold the same in trust, for my granddaughter FLORENCE MARTIN, with power and authority and subject to the terms, conditions and provisions hereinafter set forth. The said Trustee shall have full power to sell, transfer, convey, lease, mortgage, invest or reinvest, control and manage the same ∧ *and the proceeds thereof* on such terms and under such conditions as in his judgment may seem best and proper, ~~the said property so held in trust~~ and do and perform all acts and things touching and concerning the management of said property without any person who shall deal with said Trustee being obliged to see to the application of the proceeds. It is my will however, that this trust shall cease and determine on the twenty-fifth birthday of my said granddaughter, and that said property shall thereafter be her absolute property in fee simple

to do with as she deems best. In the event of her death, before she shall reach the said age of twenty-five years; the said property shall thereupon become the property in fee simple of *her brothers Edward and* ~~my said sons James and~~ *Charles* ~~Walter~~ or the survivor of them, share and share alike.

*Fourth:* I am now the owner of shares of stock in Swift and Company in the par value of Thirty Thousand Dollars ($30,000.00) $\wedge$ *or more* and in the event that I shall die still owning the same, I give, devise and bequeath shares of said Swift and Company to the par value of ~~Ten~~ *Fifteen* Thousand Dollars ($1~~0~~*5*,000.00) to STOCK YARDS TRUST & SAVINGS BANK as Trustee, for my son JOHN, and $\wedge$ *fifteen* ~~twenty~~ *thousand Dollars to* my daughter ELIZABETH, to be held in trust for them. ~~or the survivor of them, share and share alike~~, hereby granting to the said Trustee full power to sell, transfer, convey, invest, reinvest, control and manage $\wedge$ *the property in* the said trust for the ~~equal~~ benefit of the two beneficiaries ~~or the survivor of them~~ paying the income thereof to them from time to time at convenient intervals as it shall accrue, after the payment of the necessary costs and expenses of the trust. If my said son JOHN shall reach the age of fifty-five years one-half of said trust shall then be turned over to him as his absolute property and if my said daughter ELIZABETH shall reach the age of fifty years, the said trustee may turn over one-half of the said trust property to her, if he shall determine in his discretion that no part thereof will accrue for the use or benefit of the husband of my said daughter ELIZABETH. If he cannot so assure himself, he shall continue thereafter to hold the said trust property and pay the income thereof to the said ELIZABETH as heretofore, until such time as he shall feel that the said husband shall receive no use or benefit from said money. In the event of the death of both my son and daughter before the termination of the trust, $\wedge$ *the* same shall become a part of my residuary estate and pass under the

residuary clause herein to my sons JAMES and WALTER or the survivor of them.

*Fifth:* I give, devise and bequeath shares of the said Swift & Company, stock of the par value of Two Thousand Dollars $2000.00) to MARGARET MARTIN in trust, nevertheless, to pay the taxes and upkeep on the said real estate hereinbefore devised, in trust to my granddaughter FLORENCE MARTIN.

*Sixth:* I give, devise, and bequeath shares of the said Swift & Company stock of the par value of Three Thousand Dollars ($3000.00) to STOCK YARDS TRUST & SAVINGS BANK as trustee for my grandsons, CHARLES MARTIN and EDWARD MARTIN, the sons of my deceased son CHARLES, and my grandson WALTER SCHOENFELD, or the survivor or survivors of them share and share alike, the income thereof to be expended for their equal benefit as said Trustee shall deem best and the principal turned over to each of them respectively when he shall reach the age of *thirty* ~~twenty-five~~ years. ∧ *Seventh:* In the event that any legatee or beneficiary under this will shall predecease me, leaving a descendant or descendants, the interest of such legatee or beneficiary shall ∧ *if not otherwise provided for* pass to such descendant or descendants. ∧ *Eighth* It is my further will that should any person named as Trustee hereinbefore die or fail or refuse to act, then I give, devise and bequeath the property hereinbefore given to such trustee or trustees to ——— *STOCK YARDS TRUST & SAVINGS BANK* ——— Bank, with like powers and duties as the trustee or trustees first above nominated by me.

*Ninth* ~~*Seventh*~~: Neither any trust estate created herein, nor the income therefrom in the hands of the trustee shall be subject to any conveyance, transfer or assignment or pledged as security for any debt by any beneficiary, and I hereby direct the trustee in each instance ~~except as hereinbefore provided~~ to pay the income of the trust into the hands of the

beneficiary personally, and not upon any written order, assignment or judgment suffered or had.

*Tenth*
~~Eighth~~: If before my death, I shall have disposed of any of the property hereinbefore specifically devised, or bequeathed, then it is my will that the beneficiary or legatees to whom the same has been given herein, shall receive ∧ *money or* other property of equal value in lieu of such gift or legacy of such specific property as I may have disposed of as aforesaid.

*Eleventh*
~~Ninth~~: I hereby give, devise and bequeath all the rest and residue of my estate of whatsoever nature or kind, real, personal and mixed, and wherever situated and in and to which I have any right, title or interest to my said sons WALTER and JAMES, ∧ *share and share alike* and should any legacies hereinbefore made lapse for any reason, it is my will that it ∧ *or they* should be considered a part of my residuary estate, and pass to my said sons as their absolute property.

*Twelfth*
~~Tenth~~: I hereby name, constitute and appoint EUGENE J. HOLLAND as Executor of this my Last Will and Testament, and if he shall die, become disqualified or refuse to act, then FIRST TRUST & SAVINGS BANK as Executor hereof, and I direct that no surety shall be required on the bond of the Executor.

*13th I give devise*

ELLEN A. MARTIN

Witness:

WALTER W. FULTON

THOS. B. BROWN

We, the undersigned, hereby certify that ELLEN MARTIN well known to us signed the foregoing instrument in our presence, declaring it to be her last will and testament, and requesting us to sign as witnesses thereto, and she signed the same in our presence and we signed said in-

strument as such witnesses in her presence, and in the presence of each other on the ———8——— day of June A. D. 1925, believing her to be of sound mind and memory at the time, and under no undue influence, and in evidence of which we hereunto again sign our names.

WALTER W. FULTON             Residing at 8212 Emerald Ave.

THOS. B. BROWN             Residing at 8058 Peoria St.''

The sheet of paper containing clauses 13, 14 and 15, written on both sides in script, attached to the will by a clip and signed by the testatrix and the witnesses, is as follows:

13 I give devise bequeath to Margaret Martin 3633 Emerald Avenue $3000 Edison Stock.

14 I wish my family enrolled at the Franciscan Monastery Washington D. C. in the circle of masses for families $100. one hundred dollars to be paid by residuary legatees

15 I give devise bequeath to my son John Martin the sum of Three Thousand Dollars or all the my money in the Bank at Lake Geneva Wisconsin. Said funds to be held in trust for period of four years after my death by Stock Yards Trust and Savings Bank (over) to be securely invested as John Martin shall direct for home for his family

Witness:                        ELLEN A. MARTIN

WALTER W. FULTON

THOS B. BROWN

Appellants contend, first, that the interlineations made for the purpose of filling blanks, or which the will itself or the sense of it shows are necessary, do not constitute alterations, and therefore, regardless of the necessity for an explanation as to other interlineations, that portion of the will should have been admitted to probate; second, the evidence on application for probate of the will was sufficient to show that the interlineations and changes were made be-

fore the will was executed; and third, if this is not true, the testimony of Holland was competent to explain such interlineations.

A casual glance at the will is sufficient to show that it was drawn in a slovenly manner and not with the degree of care to which an instrument of such importance is entitled. Careless or slovenly drawing of an instrument, however, is not necessarily evidence that there has been a noncompliance with the law.

It appears from the typewritten portion of the will that such portion was typed in 1925, approximately two years before the date of its execution. One of the witnesses to the will, Fulton, testified that he was present while Holland was doing some writing on the will; that he saw the writing on it; that it was before it was signed; that Holland was doing the writing in a room adjoining the one in which the witnesses were sitting; that he saw Holland sitting at a table about ten feet away, writing on the will; that Holland held it up before it was signed and said something about the witnessing of the will if Mrs. Martin wanted them as witnesses, and that she said she did. He also testified that Holland explained that there were changes that he had written—changes which Mrs. Martin wanted him to make; that it was not all typewritten but that he had made the changes with a fountain pen that Mrs. Martin wanted to make; that he held up the will, turning the pages before the witnesses signed it, showing the number of pages in it and that there had been changes on every page; that he said that since typewriting the will Mrs. Martin wanted the changes made, and that was why she kept them waiting; that he had made those changes in ink. This witness testified that he was not able, from an inspection, to say which of the alterations or additions were placed on the document during the hour that Holland was working in the adjoining room, although he identified the writing filling some of the blanks left in the typewritten will and remem-

bers the change in description at the bottom of the second paragraph. He does not remember definitely the writing in script at the left-hand margin, opposite clause 6, but he testifies that there was writing on every page. An examination of the original will which has been certified to us for examination shows very plainly that all insertions or interlineations have been made with the same character of pen, the same color of ink and in the same handwriting. So it is evident from this fact and the testimony of Fulton that all of the script appearing on the will, and on the additional sheet attached thereto, is in the handwriting of Holland.

There is no doubt as to the execution in due form of the will on the day and date therein set out. The signatures of the testatrix and of the attesting witnesses are admitted to be genuine. There is no question as to her mental capacity at that time. The instrument sought to be probated is admitted to be the instrument signed by the testatrix and the witnesses, subject, only, to the question of interlineations and changes thereon which it is claimed give rise to the necessity for explanation. The duty to provide an explanation, when required, rests upon the proponents. We approach the problems involved, therefore, with the disposition to indulge no presumption to destroy the validity of this will, but every reasonable presumption will be indulged in favor of its due execution and attestation. (*Thompson* v. *Karme*, 268 Ill. 168.) The alteration of a written instrument raises no presumption of law as to when it was made or against the validity of the instrument. The question as to when, by whom and with what intent the changes were made is one of fact. If they are suspicious in appearance the party claiming the benefit of the instrument must explain the alterations, and if not satisfactorily explained the conclusion of fact follows against the instrument. The appearance of the instrument, alone, may furnish satisfactory explanation without extrinsic evidence.

*Waggoner* v. *Clark,* 293 Ill. 256; *Schmidt* v. *Bauermeister,* 279 id. 504; *Hutchison* v. *Kelly,* 276 id. 438; *Webster* v. *Yorty,* 194 id. 408; *Catlin Coal Co.* v. *Lloyd,* 180 id. 398.

The first question presented for consideration is whether the filling of blanks may be considered alterations. That question has never been directly passed on by this court. Page on Wills (sec. 787) divides interlineations into two classes, one of which arises where the inserted words are necessary to the sense of the will or are inserted in blanks left for that purpose. He states that it will be presumed that such words were inserted before execution. Strictly speaking, however, the insertion of such words as are necessary to fill blanks or to express the sense of the will is not an alteration. If it be held to be such, then it might become necessary in all cases where a printed form of will is .used and the blanks filled in, to explain the filling of the blanks. Such a rule would find no basis either in law or reason. As has been said by this court in the cases herein cited, the instrument itself may show that there is no necessity for explanation of insertions or interlineations. The filling of blanks or the writing in of words necessary to the sense of the will seems clearly to come within the scope of such language as would show on the face of the will satisfactory evidence that they were inserted before the will was executed. Jarman on Wills (vol. 1, *p. 144,) is of the view that where a will has been drawn with blanks left for names of legatees or amounts of legacies, which blanks are filled but there is no evidence to show when, the presumption is that the blanks were filled before the execution of the will; and that this is true with such interlineations as supply the sense of the instrument when the last named interlineations appear to have been written with the same ink and at the same time as the rest of the will.

In *Guerin* v. *Hunt,* 110 S. E. (S. C.) 71, it is held that blanks left in wills which have been filled are an exception to the general rule recognized in that State that the law

presumes alterations in a will to have been made after its execution. In *Crossman* v. *Crossman,* 95 N. Y. 145, it was held that where an interlineation or erasure in a will is fair upon its face and is entirely unexplained, there being no circumstances whatever to cast suspicion upon it, it would not be proper for the court to hold that the interlineation was made after execution. In *Hutchison* v. *Kelly, supra,* this court considered a will on a printed form in which a portion of the blanks had been filled and provisions in script had been written in black ink while other portions of the will had been written in blue ink. It was held that even if the different parts of the will were written at different times this would constitute no evidence of an alteration. While the fact of the use of different ink was urged as a suspicious circumstance which should call for explanation, this court, upon consideration of the will and the evidence relating to its execution, held that there were no suspicious circumstances surrounding the execution thereof which required explanation. In this case it seems clear that all interlineations which show that they are but the filling of blanks or completion of the sense of the instrument are not alterations, and therefore do not come under the rule of law requiring explanation.

So far as clauses 13, 14 and 15 are concerned, the evidence and the original instrument show that these were written by Holland and attached to the will by a paper clip before it was signed by the testatrix and the witnesses, and no question as to when those clauses were written is or can be raised in this case.

This leaves for consideration the interlineations in the will not filling blanks and the striking out of certain portions of the typed instrument. The first interlineation of this character occurs in the third clause of the will. The second sentence of that clause provides: "The said trustee shall have full power to sell, transfer, convey, lease, mortgage, invest or reinvest, control and manage the same on

such terms and under such conditions as in his judgment may seem best and proper." It will be noted that in the will as it appears for probate there are careted, following the word "same," the words written in italics, "and the proceeds thereof." This interlineation is of no force, since it in nowise affects the provisions of the will designating the power of the trustee, as the trustee has control over the proceeds of the trust property by the language already embodied in the sentence just quoted. Following the language just quoted, the words "the said property so held in trust" are stricken out with a pen. Again this is of no consequence, since it in nowise affects the meaning of the paragraph or the sentence. The last sentence of clause 3 in the typed portion apparently provides: "In the event of her death, before she shall reach the said age of twenty-five years; the said property shall thereupon become the property in fee simple of my said sons James and Walter or the survivor of them, share and share alike." There is stricken out by pen the words which apparently were "my said sons James and Walter" and inserted in lieu thereof, in the handwriting of Holland, "her brothers Edward and Charles." This is clearly a change from the typed provision of the will and does not come under the head of interlineations which are meaningless or for the purpose of completing the sense of the will and will be considered later in this opinion. In the fourth clause, in the second line, there are inserted after the figures "$30,000" the words "or more." These words are but an additional recital of the value of certain shares of stock owned by the testatrix and can in nowise affect the sense of the will. The word "ten" at the end of the fourth line of this clause is stricken out with a pen and "fifteen" is written over it, the same change being made in the figures in the bracket following. Also in the sixth line there are careted between the words "John and" and "my daughter Elizabeth" in script, the words "fifteen thousand Dollars to." There appears also to have been inserted the word

"twenty," which was stricken out by a pen and the word "fifteen" written just before it. This likewise is a change in the typed provision of the will and does not come under the class of interlineations just referred to but will also be considered later. In the seventh line of the same clause the words "or the survivor of them, share and share alike" have been stricken out by a pen. This also changes the sense of the typed provisions of the will and cannot be considered merely an interlineation of the character now under consideration and will be considered later as an alteration. In the ninth line of the fourth clause are careted after the word "manage" the words "the property in," and the word "equal" is stricken out before the word "benefit." These changes do not in any way alter the sense of the original provision of the will and need no further consideration. In the tenth line the words "or the survivor of them" are stricken out by a pen. This again changes the sense of the will as typed and must be classed as an alteration. Opposite the sixth clause of the will, in the left-hand margin, written in the handwriting of Holland, is the following: "However Walter Schoenfeld must not have his until he reaches forty years of age." This is also a change from the typed provision of the sixth clause which gives a legacy to certain legatees, including Walter Schoenfeld, with the provision to turn over the principal of such legacy when the legatee shall reach the age of twenty-five years. In the last sentence of that clause appears another change by striking out the words "twenty-five" and inserting the word "thirty," which changes the provision of the typed will. Following this sentence the word "Seventh" is inserted. This evidently was done for the purpose of dividing clause 6 into three clauses, as the word "Eighth" also appears in the thirteenth line. These changes are of no consequence and raise no suspicion as to the time of their insertion or in any way affect the validity of the will. In the sentence included within the seventh clause there is an insertion after

the word "shall" and before the word "pass" of the words in italics, "if not otherwise provided for." This interlineation does not in any way change the sense or meaning of the will, as no provision is made otherwise and cannot be considered an alteration. There also appears throughout the balance of the will a re-numbering of the clauses, so that the seventh appears as the ninth, the eighth as the tenth, and so on. These changes have been made by striking out the original words and writing therein the new number, which is evidently made by reason of the insertion of the words "Seventh" and "Eighth" in what was originally the sixth clause. These changes are of no consequence. In the ninth clause as so re-numbered, in the fifth line thereof, the words "except as hereinbefore provided" are stricken out with a pen. This does not amount to an alteration of the will, for the reason that it in nowise changes the sense or meaning thereof. The same is true with the interlineation in the fourth line of the tenth clause of the words "money or" after the word "receive." This interlineation likewise does not change the sense of the will and does not amount to an alteration of the typed portion. The same is true with the insertion careted in the fifth and sixth lines of the eleventh clause.

The interlineations in this will, with the exception of those showing changes in the meaning expressed in the typed will, amount to but the filling of blanks, or such as are necessary to the sense of the will, or are such as in nowise change the sense of the will, and such interlineations should be held to have been written in before the will was executed.

The question is then presented whether those interlineations which show a change from the meaning of the typed will raise a suspicion of an alteration at such a time as to require explanation, and if so, whether they have been explained by competent evidence.

It is objected that since the witness Fulton could not testify as to all of the changes in the will when it was exe-

cuted, he did not testify that the will as presented was the will signed by him as a witness. Under the statutes of this State it has been uniformly held that to entitle a will to probate four things must occur: The will must be in writing and signed by the testator or by someone under his direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testator sign the will in their presence or that he acknowledged the same to be his act and deed; and they must swear that they believe the testator was of sound mind and memory at the time of signing and acknowledging the same. (*Crowley* v. *Crowley,* 80 Ill. 469; *Maxwell* v. *Jacob,* 326 id. 462.) It is not required, however, that the will be read to the attesting witnesses or that they know its contents. Section 2 of the statute relating to wills requires only that at least two attesting witnesses shall testify that they were present and saw the testator sign the will in their presence or acknowledged the same to be his act and deed, and that they believe the testator was of sound mind and memory at the time he signed or acknowledged the same. (*Stone* v. *Stone,* 281 Ill. 474.) The attestation clause is *prima facie* evidence of the due execution of the will. *Hutchison* v. *Kelly, supra; Thompson* v. *Owen,* 174 Ill. 229.

There is nothing in the law requiring that evidence concerning alterations in a will be explained by two or more witnesses, but the rule is that such explanation, from whatever source, must be satisfactory. The fact that changes in the will were made by Holland before it was executed is shown by the witness Fulton. He states that changes were made in all of the pages of the will; that Holland explained to the witnesses that he had made changes as Mrs. Martin desired, and that it was for this reason that the witnesses were kept waiting; that those changes were made in ink. While this witness does not identify each change that was made, his testimony, the presumption of due execution of the will arising from the attestation clause,

the fact that the changes were all made in the same color and kind of ink, with the same kind of pen and apparently at the same time, when considered with the fact that there is no evidence that any alterations were made after the execution of the will, are sufficient to explain that the alterations in the typed instrument were made before the will was executed. The witness Brown does not remember whether he saw changes made and does not testify to any conversation concerning the matter. He does, however, identify his signature and testify to the circumstances of the signing of the will by the testatrix, by himself and by Fulton. The probate of wills does not depend upon the recollection, or even the veracity, of subscribing witnesses, and where, as here, the witnesses have testified, as required by statute, to the execution of the will, if forgetfulness or falsehood of a witness concerning interlineations can invalidate a will it would become easy in many cases to use such artifices or corrupt practices as would render the best will nugatory. (*Hutchison* v. *Kelly, supra; Schofield* v. *Thomas,* 236 Ill. 417; *Gould* v. *Theological Seminary,* 189 id. 282.) If Holland had written the whole will at the time it was executed, or had used a printed form, filling blanks and making changes thereon, suspicion would not necessarily arise that any of such changes were made after the will was executed. We are of the opinion that the present condition of the will is satisfactorily explained by the evidence. The fact that alterations of a form of will have been made does not of itself require explanation. It is only when suspicion is aroused that changes were not made before execution that explanation is required. There are here no circumstances on which such suspicion can be based, other than the fact that changes were made of which the witnesses were told by the scrivener. There is nothing to indicate that the changes from the typed form were not made before execution. In this view of the case it is not

necessary to consider whether Holland, after renouncing as executor, was competent to testify.

The circuit and probate courts erred in refusing to probate this will. The order of the circuit court is reversed and the cause is remanded to that court, with directions to order the probate of the will.

*Reversed and remanded, with directions.*