(No. 24008.—

THOMAS FLEMING *et al.* Appellants, *vs.* MARY J. FLEMING *et al.* Appellees.

*Opinion filed October 15, 1937.*

NAT M. KAHN, for appellants.

WILLIAM S. HEFFERAN, and DAVID J. A. HAYES, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The circuit court of Cook county on appeal denied probate of the will of James A. Fleming, deceased, and, as the title to certain real estate is involved, a direct appeal to this court was perfected. The case comes on without dispute in the testimony.

James A. Fleming, a widower, died May 16, 1935. He left no children. His next of kin were his sister, Mary J. Fleming, and certain nieces and nephews hereinafter referred to. On October 2, 1934, he executed the will offered for probate. Part of it was typed and part in his own handwriting. The part in handwriting had to do with specific bequests and the residuum of his estate. The typed portion included the formal features of the will and certain general provisions. For some years prior to May 16, 1935, Fleming had occupied the upper apartment of a two-story building owned by him in the city of Chicago. Martha B. Plagens, one of the legatees under his will, and named therein as one of the residuary legatees and devisees, kept house for him for a period of six years prior to his death. The testator occupied a bedroom adjoining the dining room

of the apartment and kept his private desk in his bedroom. The evidence shows that on May 16, about 11 A.M., he left his apartment. The evidence does not show when he returned as no one else was there at that time. In the early evening the tenants in the apartment below heard a stamping or pounding on the floor over their heads. On going upstairs they found him unconscious, suffering from a seizure of some sort. He died a short time thereafter without regaining consciousness.

Martha Plagens testified that when Fleming left the house in the morning there were no papers on the dining room table but that when she came in, after his death, she noticed that the lace cloth over the dining room table had been pushed back and on the table she found the loose pages of his will, together with pen and ink, some pencils and scratch pads. The will showed that it had not at any time been fastened or riveted to the cover. The lower part of the first page of the will, when it was found, had been separated from the rest of the page by tearing or cutting, and pencil lines had been drawn through the writing describing various bequests. All of the cut or torn-off portion of the first page was thus scratched out with the exception of the last line in which were the words "Mrs. Loretta McGregor my niece and Mrs. Martha B. Plagens all the." These were not scratched out. On the back of the upper portion of page 1 of the will there appeared, in the handwriting of the testator, "to Mary Fleming my sister to Matthew Fleming my nephew Mrs. Stella Plummer my niece son and daughter of my deceased brother John Fleming one ($1.00) dollar each and Mrs. May Fallon daughter of my deceased brother Thomas Fleming one ($1.00) dollar each."

In the testator's bedroom, lying on his desk, was found an unsigned memorandum in his handwriting. This memorandum was of certain bequests differing from the bequests in the original will. There also appeared on the

second sheet of the will, at the right end of the bottom margin thereof, in the testator's handwriting, certain names corresponding to those appearing in the memorandum found on the testator's desk.

The question here is whether the evidence shows a revocation of the will of James Fleming. It is conceded by counsel on both sides of this controversy, that the documents found on the day of the death of the testator were, and had been, in his possession; that the tearing or cutting off of a portion of page 1 of the will was done by him after the will was originally executed. The appellants say that it was error to deny probate of the original will because what was done did not amount to a revocation of it. Appellees, on the other hand, say that this will was a suspicious will and that the proof was not sufficient to justify its probate.

The general doctrine is, that a will is ambulatory and has no effect until the death of the testator. (*Stetson* v. *Stetson*, 200 Ill. 601.) Section 17 of chapter 148 of our statutes, (State Bar Stat. 1935, p. 3131,) provides: "No will, testament or codicil shall be revoked, otherwise than by burning, cancelling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." The word "tearing" as used in this section includes cutting and need not be a cutting of the entire will. (*Burton* v. *Wylde*, 261 Ill. 397; 1 Redfield on Wills, (4th ed.) p. 313; 1 Jarman on Wills, (6th ed.) p. 144; Page on Wills, sec. 248.) Any act of tearing of the paper on which the will is written, however slight, is an act of tearing within the mean-

ing of this statute if done with intent to revoke the will, but it is likewise true that no act of tearing or cutting, unless it be with the intention to revoke the will, accomplishes such purpose. The intent with which the act is done governs. (*Burton* v. *Wylde, supra; Bohleber* v. *Rebstock,* 255 Ill. 53.) This is true even though one of the statutory methods for revoking or altering a will is followed by the testator. His act will be ineffectual for any purpose unless his intent to thereby revoke the will appears. The intent may be inferred from the nature of the act, the condition of the instrument or by extrinsic evidence, but it must, in some competent way, be made to appear. *Hesterberg* v. *Clark,* 166 Ill. 241; *Wolf* v. *Bollinger,* 62 id. 368.

Cases heretofore coming before this court have been those of tearing or obliteration of certain portions of the will, but in none has a portion of the will been severed or cut off, leaving the remainder intact. This court has had before it, however, cases where lines have been drawn through certain portions of a will, as they were in this case, through the portion cut from the first page of the will. In those cases it has been held that drawing of the lines through certain portions of the will, unexplained, was an attempt to revoke so much of the will as was crossed out, and that, in the absence of evidence of an intention on the part of the testator to revoke the entire will, such crossing out would be disregarded and the will admitted to probate as it originally existed, so far as legible. The tearing or cutting of a portion of a will with an intent to revoke a part of it, cannot amount to a revocation of the will in this State. Such is, at most, but an attempt to revoke a portion of the will and the original will, if its contents can be determined, will be probated. *Casey* v. *Hogan,* 344 Ill. 208; *Schmidt* v. *Bauermeister,* 279 id. 504; *Hesterberg* v. *Clark, supra; Wolf* v. *Bollinger, supra;* Redfield on Wills, secs. 314, 325, 327.

Counsel say, however, that the condition in which this will was found renders it a suspicious will, and the burden is cast upon the proponents of the will to show that the testator's intention was to revoke but a portion of the will. While the record does not aid us by proof of any declaration made by the testator or facts other than have herein been indicated, yet, without regard to where the burden of proof lies, it seems quite clear from an analysis of the words of the will, together with the fact that he had the list of names before him to be affected by the change, the fact that he left untouched a portion of the last line of the part severed from the will, and the memorandum showing there was to be but a change and not an entire revocation of the will, that James Fleming did not intend to revoke the will in its entirety and to die intestate. Such an intention on his part is quite inconsistent with the obvious care which he took to separate the lower portion of the first page from the body of the will and the preservation of all the instrument, including the portion severed. His conduct, by the same token, manifested quite as clearly an intention to preserve the body of the instrument and to make inoperative that portion, only, which was severed from it. The appearance of the instrument alone, in the instant case, furnishes satisfactory explanation without extrinsic evidence. (*Martin* v. *Martin,* 334 Ill. 115; *Waggoner* v. *Clark,* 293 id. 256; *Hutchison* v. *Kelly,* 276 id. 438; *Webster* v. *Yorty,* 194 id. 408.) In such case the testator is presumed to have intended that the erasure or tearing was to remain dependent upon such alteration going into effect as a substitute and that, until another will was drawn making such substitution, the original should stand in legal force the same as it did before. *Casey* v. *Hogan, supra; Hesterberg* v. *Clark, supra; Wolf* v. *Bollinger, supra.*

We are of the opinion, therefore, that the severance of the lower portion of page 1 and striking out the lines written thereon, were not done with the intention of revoking

the will in its entirety but with intent to change the same as to certain specific legacies. Such acts did not have the effect of revoking the legacies contained in the part so severed, and as all the provisions of the will, as originally written, are legible, the original will is entitled to probate and it was error to deny probate thereof.

The judgments of the circuit court and the probate court are reversed and the cause remanded to the probate court, with instructions to admit the will to probate, as originally written and executed.

*Reversed and remanded, with directions.*