(No. 25209.—

THE BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH *et al.* Appellants, *vs.* PEARL SHERRY *et al.* Appellees.

*Opinion filed October 13, 1939—Rehearing denied Dec. 6, 1939.*

Roswell B. O'Harra, and Flack & Kerman, for appellants.

C. G. Gumbart, for appellees.

Mr. Chief Justice Wilson delivered the opinion of the court:

Catherine C. Bennett, a widow, eighty-three years of age, a resident of Good Hope, McDonough county, died in September, 1938. Her estate consisted of both real and personal property. An instrument dated December 3, 1929, purporting to be her last will and testament, was denied admission to probate by the county court of McDonough county. After a hearing *de novo,* the circuit court affirmed the order of the county court. The two residuary devisees and legatees and a specific devisee prosecute this appeal. Three first cousins, heirs-at-law of the testatrix, and the administrator of her estate are the appellees.

The sole issue presented for decision is whether the will was revoked by the testatrix. We have examined the will, consisting of three typewritten pages, which was certified to us for inspection. Mrs. Bennett's signature in pen and ink appears in three places, on the left-hand margin of the first two pages and at the end of the will on the third page. Her name occurs three times, once in the exordium clause and twice in the attestation clause. The will was duly attested. Numerous pencil marks and notations made thereafter appear on the document. The parties stipulated that the pencil handwriting upon the face of the will, consisting of words, was in the handwriting of the deceased. Neither the exordium clause nor the first section directing payment of debts have been changed. The second section makes bequests to fifteen individuals and also a charitable bequest. Six of the sixteen paragraphs remain unchanged. These include three monetary bequests and three bequests of house-

hold furnishings and personal effects. A description of the pencil marks and notations on several paragraphs of the second section of the will is as follows: Pencil marks run through the name of the legatee, the amount of the legacy and the description of a piece of jewelry in the second paragraph. In the opposite right-hand margin is the word "deceased." Reductions in legacies of $250 and $500 in the fourth and fifth paragraphs, respectively, have been made by horizontal lines through the word "Two" and writing above it the word "One" and running a vertical line through the number "2" in "250" and interlining the figure "150" in the fourth paragraph, and, in the fifth paragraph, by a line through the words "Five Hundred" and the figures "$500" and placing above the latter "$250." The residence addresses of the legatees in these paragraphs have been stricken and one new address substituted. A bequest of $1000 "toward the building of a Y.M.C.A. building in Macomb, Illinois, if the same is built within one year of my death," has been encircled, five vertical marks cross it, the letter "W" has been superimposed on the letter "M" in the letters "Y.M.C.A.", horizontal marks run through the figure "$1000," and immediately below it there has been added "Y.W.C.A. 500." A bequest of dishes to which the testatrix attached a sentimental interest has been stricken and in the right-hand margin of the paragraph is the explanatory notation "she has them." The bequest in the twelfth paragraph to Mrs. E. E. Porter of "the bed that she borrowed of me" has two lines through each word A bequest in the fourteenth paragraph to a cousin of an "old english gold watch and heavy chain" has pencil marks running through the words "and heavy chain" and immediately below the stricken words is the information "sold." The last paragraph of section 2 beqeathing a Hupmobile to I. W. Black has been stricken. This automobile, it appears, was disposed of by the testatrix several years prior to her death. The third section of the will devising ten acres of land in

Sacramento county, California, to J. W. Burtch has been stricken, and in the right-hand margin are the words "now deceased." By the fourth section of her will Mrs. Bennett devised and bequeathed the residue of her estate to her executor, with directions to convert it into cash. This section further provides that the proceeds from the sale of the testatrix's interest in the old Bennett homestead shall "be divided equally between the McDonough County Orphanage and the Presbyterian Church of Good Hope, Illinois." The words "be divided equally between the McDonough County Orphanage" have been underscored, "and the" remain unchanged, a loop has been drawn around the designation of the other legatee and on the right-hand margin there has been written the following: "Presbytery to which the church in Good Hope belongs." Provision is then made for equal division of the residue between the boards of National Missions and Foreign Missions of the Presbyterian Church in the United States. Eight connecting diagonal lines run through the residuary clause. The appointment of C. G. Gumbart, as executor, the testimonium clause, the signature of Mrs. Bennett to the will, the attestation clause and the signatures of the two attesting witnesses have not been changed.

I. W. Black, who had lived in Mrs. Bennett's home for eleven years testified that several days after her death he found the will in a long envelope upon which was printed in the upper left-hand corner the return address "Law Offices of Gumbart & Grigsby, Macomb, Illinois." Across the other end of the envelope are the typewritten words "Last Will and Testament of Catherine C. Bennett" and on the face of the envelope in dim lead pencil in the handwriting of the deceased these words appear: "August 1st 1938 The enclosed will not to be executed Kate Bennett " The envelope was admitted in evidence.

Section 17 of the act in regard to wills (Ill. Rev. Stat. 1937, chap. 148, par. 19, p. 3195) expressly provides: "No

will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament, or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." No claim is made that the will was revoked by burning or tearing or by any subsequent instrument. Since every word of the will as originally executed is legible it is manifest that there was no revocation by "obliterating." The narrow issue presented for determination is, accordingly, whether Mrs. Bennet revoked her will by "canceling," within the contemplation of the applicable statute.

A valid will, once existing, continues in force unless revoked in the mode prescribed by the statute. (*Wolf* v. *Bollinger,* 62 Ill. 368.) Even though one of the requisite methods for revoking a will is followed by the testator, the intent with which the act is done governs. While the intent may be inferred from the nature of the act, such intent must, in some competent way, be made to appear, the testator's act being ineffectual for any purpose unless there is an intent to revoke the will. (*Fleming* v. *Fleming,* 367 Ill. 97; *Hesterberg* v. *Clark,* 166 id. 241; *Wolf* v. *Bollinger, supra.*) In order to constitute the revocation of a will by canceling there must be a blotting or striking out, or writing over the will or an essential portion thereof, and the cancellation must be made with intent to revoke the will. (*Dowling* v. *Gilliland,* 286 Ill. 530.) An alteration made by a testator in his will, unauthenticated by a new attestation in the presence of witnesses or other form required by statute, fails for want of proper attestation, leaving the original will in full force. In particular, the drawing of lines through certain portions of a will, in the absence of

evidence of an intention on the part of the testator to revoke the entire will, cannot amount to a revocation of the will, the crossing out will be disregarded and the instrument as originally executed, so far as its contents are legible, is entitled to be admitted to probate. *Fleming* v. *Fleming, supra; Casey* v. *Hogan,* 344 Ill. 208; *Schmidt* v. *Bauermeister,* 279 id. 504; *Hesterberg* v. *Clark, supra; Wolf* v. *Bollinger, supra.*

Recourse to the will in the present case discloses that the amounts of certain bequests have been stricken and reduced amounts inserted, names and designations of beneficiaries have been canceled and substitutions attempted, and, in other instances, marginal memoranda indicate that the deaths of a legatee and a devisee induced the testatrix to strike provisions made for them, irrespective of whether she knew the lapsed bequests and devises had become inoperative, and that she had disposed of items of bequeathed property to a particular legatee by gift, thereby fulfilling her wish, or by sale of property bequeathed to others, rendered fulfillment impossible. These changes, among others, demonstrate that the testatix desired to and did alter her will from time to time but not that she was revoking or intended to revoke the entire will and die intestate. Her intention in this regard is consistent with the condition of the will. Our examination of the instrument shows that the testatrix left the first three paragraphs intact and unmarked, namely, the declaratory or exordium clause, the first section directing payment of debts and the first paragraph of the second section giving a legacy of $500. Similarly, five other dispositive clauses of the second section, the description of one of the legatees in the fourth section, the appointment of the executor, and the testimonium clause were not in any way changed. No marks were made in an attempt to cancel Mrs. Bennett's signature at the end of the will, the attestation clause or the signatures of the attesting witnesses. Although testatrix's name appears in two

other places on her will in her own handwriting, there is no mark of any kind upon any of her signatures. A consideration of the entire document leads irresistibly to the conclusion that testatrix intended her will to stand, except as to the changes she had attempted to make. The appearance of the instrument alone, in the case at bar, as in the recent case of *Fleming* v. *Fleming, supra,* furnishes satisfactory explanation without extrinsic evidence. Here, there has been no actual physical cancellation of the entire will, and, further, evidence is wanting that the testatrix intended the partial cancellation should operate as a complete revocation. The interlineations and marginal memoranda were not made with the intention of revoking the will in its entirety but with intent to change the will as to certain legacies, bequests and devises. Obviously, the canceling of portions of a will with an intent to revoke parts of it, cannot amount to a revocation within the contemplation of section 17 of the Statute of Wills.

The argument is advanced that the notation on the envelope dated a few days prior to the death of the venerable testatrix is indicative of an intention to revoke the will. Proof is wanting that the writing was placed on the envelope in which the will was contained at the same time the marks and notations were placed on the will itself. Even if the pencil notation on the envelope evinced an intention to revoke the will the notation is nevertheless inoperative as a revocation because it was not executed conformably to section 17 of the statute. An intention to revoke a will, unaccompanied by at least one of the acts prescribed by the statute and executed in compliance therewith, is insufficient. (*Bohleber* v. *Rebstock,* 255 Ill. 53.) Notations upon the blank spaces of a will without physically obliterating or striking out any language of the will have been held insufficient to effect a cancellation, even though the notations may express an intention to revoke and cancel. (*Dowling* v. *Gilliland, supra.*) In the present case there are not only notations in the blank spaces but also pencil marks striking

out certain provisions of the will. The notations, however, merely expressed an intention to revoke and cancel particular provisions of the will and, in some instances, to substitute new provisions for those stricken. If memoranda such as appeared on the face of the will in the *Dowling case* are ineffective to constitute a revocation, an equivocal notation upon an envelope containing a will is likewise inoperative as a revocation by canceling.

Reliance upon *Noesen v. Erkenswick,* 298 Ill. 231, can not avail appellees. There, the testatrix's attorney, conformably to her direction and in her presence, wrote across essential parts on the face of her one-page will, namely, a part of the signature, the date, the name of the executor, and the single devise made, the words, "I hereby cancel and annul the within instrument, this 26th day of May, 1915." The testatrix thereupon signed the notation. Upon the foregoing factual situation this court held there was an effective cancellation by writing. Manifestly, the facts are not parallel to those in the case at bar. Here, the will consisted of nearly three pages, no words are written across any essential part of the will such as the testatrix's signature, the date, the name of the executor or the attestation clause, a substantial number of gifts remain untouched, and there is no express statement in writing that the testatrix intended to cancel and revoke her will. In *Burton v. Wylde,* 261 Ill. 397, cited by appellees, the signature of the testatrix to a codicil had been cut out in such a manner that the cutting destroyed words appearing in the residuary clause on the other side of the page and, in fact, mutilated the will. The conclusion that both the codicil and the will were revoked did not involve any question of revocation by canceling.

The orders of the circuit and county courts are each reversed and the cause is remanded to the county court, with directions to admit the will to probate as originally written and executed.

*Reversed and remanded, with directions.*