(No. 31998.—

IN RE ESTATE OF WILLIAM F. BAKHAUS.—(WILLIAM BAKHAUS, Exr., Appellee, *vs.* AUGUST BAKHAUS *et al.*, Appellants.)

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

BARR & BARR, and BUTZ, BLANKE & STITH, both of Joliet, for appellants.

JAMES E. BURKE, of Joliet, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

William F. Bakhaus, a resident of Crete, Illinois, died on July 9, 1947. A document purporting to be his last will and testament was found in a drawer in the harness shop which he operated in the basement of his home on July 14, 1947. The instrument consisted of two pages of typewriting, and is as follows:

Page 1
"KNOW ALL MEN BY THESE PRESENTS, That I, William F. Bakhaus, of Crete, Illinois, being of sound and disposing mind and memory do hereby make, publish and declare, this to be my Last Will and Testament, hereby revoking all Wills by me at anytime heretofore made.

"First; I order and direct, that my Executor hereinafter named pay my funeral expenses and just debts as soon after my decease as conveniently may be.

"Second; I give, devise and bequeath unto my beloved wife Bertha Bakhaus, all of my personal property and belongings, that I may die possessed of or may be entitled to.

"Third; My Home described as, Lot Number Two (2) in Seggebruchs Subdivision, in the Village of Crete, County of Will and State of Illinois, with the buildings thereon, I give, devise and bequeath unto my beloved wife Bertha Bakhaus, for her sole use during her lifetime and after her death, the same shall become the property of my Nephew, William Bakhaus, of Grant Park, Illinois. Subject however to the payment of the following bequests which are to be paid after the death of my beloved wife, Bertha Bakhaus, as follows:

To my brother Fred Bakhaus, One Hundred Dollars

To my brother August Bakhaus, One Hundred Dollars

To my sister Emma Engelking, One Hundred Dollars

To my niece Velma Bakhaus, One Hundred Dollars

To my niece Beatrice Bakhaus, One Hundred Dollars

and I charge the aforesaid Real Estate with the payment of the above bequests.

"Fourth; I hereby nominate and appoint, my nephew William Bakhaus of Grant Park, Illinois, sole Executor of this my Last Will and Testament and I do hereby exempt him from giving any Surety on any Bond that may be required of him as such Executor.

"In Witness Whereof, I have hereunto set my hand and affixed my seal this _27th_ day of October, A.D. 1941.

### Page 2

"The within instrument, consisting of two sheets of paper including this sheet, was at the date thereof, signed, sealed, published and declared, by the said Testator, William F. Bakhaus as and for his Last Will and Testament, in the presence of us and we at his request and in his presence and in the presence of each other, have affixed our names as witnesses thereto, the day and year first above written.

| Witnesses | Address |
|---|---|
| _Johanna Rohe_ | _Crete, Ill._ |
| _Fred A. Rohe_ | _Crete, Ill._" |

It was on legal size paper and the signature of the testator had been cut from the will. The cutting had appar-

ently been done by a sharp instrument straight across the bottom of the page, and the cutting had removed not only the bottom of the first page together with the signature, but also the bottom of the second page of the will.

The executor named in the will offered the same for probate. The attesting witnesses appeared before the probate court and testified to the proper execution of the will by the testator, and that court admitted the will to probate. Two of the heirs appealed from the action of the probate court to the circuit court of Will County and after another hearing in that court the will was held to have been properly admitted to probate. These two heirs have brought this appeal contending that the will was improperly admitted to probate. A freehold being involved, the appeal has been taken directly to this court.

William F. Bakhaus, the testator, was a widower and was the owner of a house in Crete, where he lived, in the basement of which he conducted a harness shop. His wife had died in 1946 and after her death his nephew William Bakhaus and his nieces, Velma Bakhaus and Beatrice Bakhaus, children of his deceased brother, came and resided with him in this home. He was afflicted with palsy and during the last few months of his life he was quite shaky and had to be assisted while eating or cutting his food by his niece and at times it was necessary for her to assist him in the harness shop. The proponent of the will offered the testimony of the two attesting witnesses as to the due execution of the will on October 27, 1941, showing that the will was duly and properly executed in Crete, at the office of a real-estate broker who had prepared it at the request of the testator. After the execution of the will it appears that the testator took the will with him to his home and that it remained there until his death. No evidence was submitted by any of the parties as to the circumstances attending the mutilation of the will. The proponent, however, did introduce testimony of several witnesses who

testified to statements and declarations made by the testator during his lifetime that he wanted his home to go tc his nephew, the proponent, and that the deceased held the proponent in high regard. It was further shown by the evidence that the will was found in a drawer in the harness shop, while his other valuable papers were found in a safe which the testator kept in his bedroom closet. Evidence was admitted indicating that the harness shop was a gathering place for testator's many customers and numerous friends, that the entrance to the harness shop was unlocked and that persons other than the testator had access to the shop.

Two witnesses testified in behalf of the contestants. These witnesses were nieces of testator and daughters of one of the contestants. They testified that in December, 1946, about 7 months prior to testator's death, he stated to them that the home was not going to the nephew but that he desired to have all of his property divided equally between his heirs. Fred Rohe, the man who drew the will, testified that the last time the testator spoke to him about his affairs in detail was when the will was drawn in 1941, but that, about a week before testator died, testator had a conversation with him in which he told Rohe he wanted to see him sometime and that he would let him know when he should come, since he thought he might make some changes in his will.

The contestants argue that the will was revoked by the testator and therefore should not have been admitted to probate. They contend that where a will remains in the testator's possession until his death and is then found among his papers or effects with erasures, alterations or mutilations, the law presumes that the will was revoked by the testator with the proper intention. The proponent contends that the will was properly admitted to probate because the will was established as having been validly executed and, before the presumption of revocation by the testator exists,

it must be established that the will was in the exclusive possession and control of the testator up until the time of death. He further argues that any presumption of destruction by the testator is a rebuttable one which can be overcome by declarations of the testator and other evidence. Likewise, he contends that this case presents purely a question of fact and that the decision of the trial court will not be disturbed unless manifestly against the weight of the evidence.

Our statute on wills provides (Ill. Rev. Stat. 1949, chap. 3, par. 194,) "Every will by which any real or personal estate is devised or bequeathed shall be reduced to writing, shall be signed by the testator or by some person in his presence and by his directions, and shall be attested in the presence of the testator by two or more credible witnesses."

Our statute also provides the mode in which a will may be revoked. (Ill. Rev. Stat. 1949, chap. 3, par. 197.) "A Will may be revoked only (a) by burning, cancelling, tearing, or obliterating it by the testator himself or by some person in his presence and by his direction and consent, (b) by some other will declaring the revocation, (c) by a later will to the extent that it is inconsistent to the prior will, or (d) by an instrument in writing declaring the revocation and signed and attested in the manner prescribed by this Article for the signing and attestation of a will."

It has been held that this provision of the statute permitting the revocation of the will by tearing also permits revocation by cutting the will and that such cutting need not be the cutting of the entire will. *Fleming* v. *Fleming,* 367 Ill. 97; *Burton* v. *Wylde,* 261 Ill. 397.

We have held that even though one of the requisite methods of revocation is followed by the testator, the act is ineffectual unless there is an intent to revoke the will. (*Gorrell* v. *Boyd,* 376 Ill. 132.) We have also held that the intent to revoke the will may be made to appear from

the nature of the act of revocation. *Board of National Missions* v. *Sherry,* 372 Ill. 272; *Martin* v. *Martin,* 334 Ill. 115.

Cases wherein a will is torn or cut normally fall in two categories, first, cases wherein certain provisions or portions of the will are removed by cutting or tearing, and second, cases where the signature is removed or obliterated. In the first type of case we have held that the tearing or cutting of a portion of the will was similar to cases wherein lines have been drawn through certain portions of the will. In these instances it has been held that the drawing of a line through certain portions of the will, or the cutting of a certain portion of it, was an attempt to revoke so much of the will as was crossed out or removed and that, in the absence of evidence of an intention on the part of the testator to revoke the entire will, such crossing out or cutting would be disregarded and the will admitted to probate as it originally existed, so far as legible. *Fleming* v. *Fleming,* 367 Ill. 97; *Casey* v. *Hogan,* 344 Ill. 208; *Schmidt* v. *Bauermeister,* 279 Ill. 504.

In the latter type of case the court has held that, where a signature of a testator had been cut from the codicil to the will, the codicil was revoked and, depending upon the intention of the testator as to the will itself, the whole will could be revoked by such action. *Burton* v. *Wylde,* 261 Ill. 397.

In the case of *Burton* v. *Wylde,* we held that, if declarations by the testator are admissible to prove a lost will, they were admissible to explain the acts of revocation or to show the intent of the testator, and we stated, "If declarations of this nature are admissible to show the total destruction or cancellation of the will there can be no escape from the conclusion that they are admissible to show partial mutilation, cancellation or tearing of the will."

In the case of *Burton* v. *Wylde* many statements had been made by a testatrix to various people, some indicating that she had destroyed her will and some indicating that

she had a will. In that case, after discussing the various contentions of the parties and the conflicting evidence, this court stated, "Intelligent, careful woman that she was shown to be, how should she expect the will to remain in force if she cut a portion out of it, even though that portion might be small? In view of all the evidence in the record, in the light of the condition in which the will was found among the papers of the testatrix at her death, we can reach no other conclusion, under the authorities, than that she herself cut out her signature with the intention of revoking the entire document."

It would appear to us from the record of this case that the cutting of the signature from the will must certainly be taken as an act of revocation. The signature is the most important part of the will and if one not familiar with the statute were to revoke a will, the cutting of the signature from the will would be an ordinary mode to adopt, since the cutting of signatures from documents is frequently used to indicate their cancellation.

Proponent has argued that the will was not in the possession or control of the testator until his death, and has attempted to avoid the presumption that when the will is found in the possession and control of testator in a mutilated condition the law presumes that the mutilation was done by the testator with the requisite intention. He asserts that, the will having been kept in a drawer in the harness shop, it was not in the exclusive possession of the testator as it would have been had it been in the testator's safe in his bedroom. We do not agree with this contention because we do not feel that the exclusive possession of the testator means that it must be kept under lock and key or in a safety-deposit box. This will appears to have been kept in a drawer where he kept other papers in connection with his business. The fact that the place where he kept the will was not as safe a place as he had available to him does not mean that the will was not in

his exclusive possession and control. If the keeping of the will in the drawer rather than the safe means anything, it could easily mean that the testator, having revoked the will, thought that it was no longer a valuable paper and therefore did not keep it in his safe but rather in a drawer in his harness shop where he could look at it and decide whether or not he wanted to make a new will.

Under all of the circumstances shown by this record, we believe that the will should not have been admitted to probate, in view of the fact that it did not contain the signature thereon of the testator and it appearing that the will had, since its execution, remained in his possession and control.

The right of a person to dispose of his property by will did not always exist but was originally created by statute. In view of the fact that a will operates contrary to the statute of descent and permits a person to dispose of his property contrary to the way the law prescribes, we believe that the proponent of a will disposing of property contrary to the statute of descent has the burden of showing the will to be validly executed and effective, and that the presumption against the validity of a will which has been mutilated should not be lightly set aside. This court can see that in the case at bar it could well have been the intention of the testator to give his home to his nephew and namesake, and, while such an intention might be considered commendable, such an intention is contrary to the statute of descent and, therefore, any will which attempts to accomplish that purpose must be established by such evidence as to leave little doubt as to its validity.

For the reasons stated in this opinion, the judgment of the circuit court of Will County is reversed and the cause remanded, with directions to enter an order denying the probate of said will.

*Reversed and remanded, with directions.*