## No. 16,347.

HOFF *v.* ARMBRUSTER ET AL.
(226 P. [2d] 312)

Decided October 16, 1950. Rehearing denied January 15, 1951.

564

Mr. ISAAC MELLMAN, for plaintiff in error.

Mr. HAROLD B. WAGNER, Mr. CARL A. WYERS, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

MINNIE S. PHILLIPS died January 8, 1948. Gladys A. Armbruster qualified as administratrix of her estate on January 15, 1948. Plaintiff in error, to whom we hereinafter refer as petitioner, on July 20, 1948, filed her petition in the said estate proceedings, in which she sought to have admitted to probate a will alleged to have been duly executed by decedent May 15, 1936.

Defendants in error, hereinafter designated as caveators, are heirs at law of the deceased Minnie S. Phillips. They filed their caveat in which they objected to the probate of the alleged will upon the following grounds: 1. that the instrument tendered as the will of the deceased was not executed by deceased as her will; 2. that the instrument was delivered to decedent immediately after it was prepared and she retained it in her custody and control at all times until she revoked it; 3. that if said instrument was executed by the decedent as her will, she revoked it.

The cause was tried upon these issues in the county court, resulting in a judgment adverse to petitioner. On appeal to the district court, a jury was empaneled and the cause proceeded to trial, in which petitioner also was unsuccessful.

The undisputed evidence established that on May 15, 1936, Minnie S. Phillips executed a will which was prepared at her request by her attorney. Immediately following the due execution of this will the said instrument was delivered to decedent and, so far as appears from the record, was not seen at any time thereafter. Mr. Hugh B. Kellogg, the attorney who drew the will in 1936, prepared the papers, which resulted in the opening of the estate as an intestate estate. He testified: "I have never found any evidence at all that there is any will. I have never seen the original since the day I handed it to her, and we couldn't find it." Mr. Kellogg identified petitioner's Exhibit 1 which was an unsigned duplicate carbon copy of the will executed by decedent on May 15, 1936. Thereupon the following offer of proof was made by the attorney for petitioner:

"I expect to offer Exhibit 1, which has been identified as a carbon copy of the will executed by Minnie S. Phillips which was properly executed and properly attested and witnessed. That is, the original was properly executed, attested and witnessed. Then I expect to offer or expect to have identified Exhibit 2 as the last will and testament of William L. Phillips and have Mr. Kellogg testify as to the execution and witnessing, and have Mrs. Daly testify to that, and I expect to offer that Exhibit 2 and also to show that subsequent to the death of William L. Phillips, his will was lodged with the Clerk of the County Court in Denver by Mrs. Phillips, and on the basis of their being mutual wills, we respectfully submit to the Court we have made a prima facie case, and it would be up to the caveators to show a proper revocation of the will, the original of Exhibit 1, by the testatrix."

\* \* \*

"We expect to prove that identical wills were executed on the 15th, that the next day Mr. Phillips made a slight, minor change, which was prepared by Mr. Kellogg, and the will, Exhibit 2, was executed by Mr. Phillips and

witnessed and based upon the language being identical in the two wills as to the major parts thereof, that they are mutual and reciprocal wills, and therefore, when Exhibit 2 was lodged by Mrs. Phillips, the original of Exhibit 1 was still in force legally at her death, and we will have made a prima facie case at that time."

In response to the suggestion of the trial court that the offer of proof be made more definite in certain particulars the attorney for petitioner further offered to prove that William L. Phillips, the testator in Exhibit 2, died in November, 1946, and within a day or so thereafter Minnie S. Phillips lodged his will with the clerk of the county court; that the said will of Mr. Phillips was not admitted to probate; and that, subsequent to the death of William L. Phillips part of the will was carried out by Minnie S. Phillips "in that she sent a thousand dollars to one of the legatees mentioned in the will of William L. Phillips."

The petitioner's attorney, having indicated that the proof offered would conclude the evidence on her behalf, counsel for caveators objected to the proof offered upon the ground of irrelevancy, and moved that the petition for probate of the alleged will be denied. In ruling upon this motion the court said:

"So the record will be clear, I will consider the offer of proof as being evidence that would be in should the Court rule on the motion for non-suit, and considering that offer of proof as evidence for the purpose of ruling on the motion, I think the motion for dismissal was good.

\* \* \*

"Exhibit 1 will be admitted for the purpose of the record, and Exhibit 2, likewise, under the statement that I just made."

. The court discharged the jury and entered formal judgment which includes the following:

"B. That the evidence presented by the appellant whether actually adduced from witnesses or tendered in the appellant's behalf by her counsel as an offer of proof

is insufficient as a matter of law to prove that the will offered for probate by the appellant was ever executed by the decedent in the manner provided by the Colorado statutes and said evidence is likewise insufficient to prove that said alleged will was in existence at the time of decedent's death;

"C. That the order of the County Court of the City and County of Denver denying probate of said will be and it is hereby affirmed;

"D. That the appellant's said petition for probate be and it is hereby dismissed;"

Petitioner seeks reversal of this judgment by writ of error.

### Questions to be Determined.

First: *Assuming that the will executed on May 15, 1936, by decedent and the will of William L. Phillips were mutual wills containing reciprocal bequests, is the presumption that the former was revoked, which arises upon failure to find it, overcome by evidence that the latter was lodged with the county court ten years after execution of the instruments, and that one of numerous bequests in the latter was carried out, in that one beneficiary was paid the sum of $1,000.00?*

██ This question is answered in the negative. It is argued that since the two instruments were reciprocal by the act of lodging the will of William L. Phillips with the clerk of the county court, Minnie S. Phillips affirmed the instrument theretofore signed by her, and, in a sense, republished the same as her will as of that date, and recognized her contractual obligation to continue the same in full force and effect. For reasons hereinafter discussed the probate court, and the district court on appeal in this proceeding, upon petition for probate of an alleged will, were limited to the determination of the issue whether the offered instrument was the last will of the decedent. The county court, and the district court on appeal in such a proceeding, had no power to enforce a contract to make wills which were mutual and recip-

rocal in their provisions. Thus any contractual obligation arising under the present circumstances is without effect as evidence tending to rebut the presumption of revocation which arises upon failure to find the will of decedent. The death of Minnie S. Phillips did not occur until fourteen months after she lodged the will of Mr. Phillips in the county court. Since his will was not offered for probate we cannot assume that Mrs. Phillips acknowledged the instrument to be his will. Neither can we assume that she benefited under its provisions in the absence of probate thereof.

In this cause the evidence clearly shows that the will, probate of which is sought, was last seen in the exclusive possession and control of decedent. Upon her death, and after thorough search, it could not be found. Under such circumstances the law presumes that the maker of the will destroyed it with intent to revoke. This well-established rule is stated in 57 American Jurisprudence, page 377, section 549, as follows: "Where a will which cannot be found following the death of the testator is shown to have been in his possession when last seen, the presumption is, in the absence of other evidence, that he destroyed it animo revocandi." This rule has been recognized by our court in *Eder v. Methodist Episcopal Church Ass'n*, 94 Colo. 173, 29 P. (2d) 631, in which we said: "Also we feel it proper to say that the universally recognized presumption, that a will that may have been in the testator's possession and cannot be found at his death was destroyed animo revocandi, may be rebutted * * *."

There is no evidence in the present record tending to rebut the presumption of revocation, and it follows that the petitioner can prevail, if at all, upon her right as beneficiary under a contract between two testators to make reciprocal wills.

Second: *Where issues are framed in probate court upon petition for probate of an alleged will and caveat thereto, does the probate court, or the district*

*court on appeal, have power to enforce an agreement between two testators to make wills which are mutual and reciprocal in their provisions, by ordering probate of a will which was revoked in breach of such agreement?*

This question is answered in the negative. There are numerous cases dealing generally with the rule which is applicable to this phase of the case. An extended annotation covering the question appears in 169 A.L.R. 53. From the cases there cited we quote from *Farley v. Brainard,* 237 Iowa 1069, 24 N.W. (2d) 453, as follows:

"The rule seems to be well established that as such a revocation constitutes a breach of the contract, relief is to be afforded on that basis but the revoked will cannot be probated. In *Doyle v. Fischer,* 183 Wis. 599, 198 N.W. 763, 765, 33 A.L.R. 733, the court stated:

" 'It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands, and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud.' "

In 57 American Jurisprudence, page 485, section 716, we find the following:

"A probate court whose jurisdiction is limited to the determination of the issue whether the instrument propounded is the last will of the decedent lacks power to enforce an agreement between two testators to make wills which are mutual and reciprocal in their provisions.

* * *

█ Likewise, the rule is that a will which has been revoked cannot be probated even though the revocation was in violation of a contract for the execution of separate wills containing reciprocal bequests."

In *Williams v. Pollard,* 101 Colo. 262, 72 P. (2d) 476, we followed the above rule. In that case a similar situation was involved. We stated:

"The enforcement of rights under mutual or reciprocal

wills is grounded entirely upon equitable theories. Where there has been a violation of the agreement upon which the mutual wills were based, a court of equity, by reason of its extraordinary power to enforce specific performance of contracts and to prevent frauds, in an appropriate suit and proper case, enforces such agreement in an equitable manner by decreeing a specific performance of the agreement or by impressing a trust upon the property in favor of the parties aggrieved by the violation of the agreement. * * *

"It is apparent, therefore, that rights of the parties based on the alleged mutuality of these wills could not be determined upon a petition or proceeding of the character of the one here under consideration."

In the instant case, as also was made clear in *Williams v. Polland, supra,* we express no opinion upon the issue of the alleged mutuality of the wills, nor upon the authority of Minnie S. Phillips to revoke her will, leaving these matters to be determined if and when they are raised in an appropriate proceeding.

The judgment is affirmed.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE STONE and MR. JUSTICE ALTER dissent.