In re the Matter of the Estate of Cora V. Gray, Deceased.

Leola Long, et al., Petitioners for Letter of Administration, Appellants, v. The First National Bank and Trust Company of Rockford, Illinois, et al., Respondents, Appellees.

Gen. No. 11,677.

Second District, Second Division.

February 19, 1962.

Canfield, Canfield, Franks & Lindroth, of Rockford (Robert R. Canfield and Herbert Franks, of counsel), for appellants.

Williams, McCarthy & Kinley, of Rockford (John R. Kinley and Elmer C. Rudy, of counsel), for appellees, The First National Bank and Trust Company of Rockford.

SPIVEY, J.

This is an appeal from an order of The Probate Court of Winnebago County admitting to probate an instrument purporting to be the last will and testament of Cora V. Gray, and appointing The First National Bank and Trust Company of Rockford as executor. In the same order, the court denied a petition for letters of administration supported by an instrument entitled "Revocation of Prior Will or Wills," claimed to have been executed by Cora V. Gray. Certain of the heirs of the decedent appealed from the order admitting the instrument to probate and only the executor appears here in this court in support of the order. Other legatees and devisees, both individuals and charitable institutions, while interested in the outcome of the appeal, have not participated in this appeal.

The evidence shows without contradiction that on January 10, 1961, Cora V. Gray executed a will which was properly attested, and thereby made numerous gifts to relatives and charities. Thereafter, on May 1, 1961, Cora V. Gray executed an instrument of revocation by signing her mark in the presence of two witnesses. Both instruments were introduced in evidence and witnesses testified as to the circumstances surrounding their execution.

After the hearing, the court entered the following order: "From said testimony and evidence, it appears

241

said instrument dated May 1, 1961, was not duly executed and attested according to law nor was Cora V. Gray of sound mind and memory and otherwise competent to make her will at the time of the time of execution of said written instrument dated May 1, 1961, nor was the purported execution of said instrument by Cora V. Gray free from fraud, compulsion or other improper conduct but on the contrary there was proof of fraud, compulsion and other improper conduct arising from all the circumstances attending the execution of said instrument, sufficient to invalidate or destroy the legal effect of said purported 'Revocation of Prior Will or Wills.' "

It is conceded that the will admitted to probate was properly executed. Pursuant to Section 46, of the Probate Act (Ill Rev Stats c 3, § 46, 1959) a will may be revoked "by the execution of an instrument in writing declaring the revocation and signed and attested in the manner prescribed by this article for the signing and attestation of a will." The instrument of revocation was so signed and attested. Thus the only question for us to determine is whether the order of the Probate Court is contrary to the manifest weight of the evidence.

In support of the petition for letters of administration, the attesting witnesses to the instrument of revocation testified. These witnesses both testified that they were nurses in attendance upon Cora V. Gray and that when they saw the decedent affix her mark, they were of the opinion that she was of sound mind and memory. Both nurses also stated that no fraud, forgery, compulsion or wrongful conduct was practiced upon the decedent. Cecelia Nolan, one of the nurses, testified that the deceased nodded and smiled when asked if she knew what she was signing and this witness stated that the deceased knew what she was doing. She also stated that the decedent expressed her own mind and was sweet and cooperative.

Shirley Saga, the head nurse on the floor where Cora V. Gray was hospitalized, testified that she witnessed the signing of the revocation instrument by Mrs. Gray and that Mrs. Gray signed the instrument of her own free will. It was the opinion of nurse Saga that Mrs. Gray understood anyone who spoke to her and that Mr. Neiber read the revocation instrument to Mrs. Gray. Nurse Saga stated that Mrs. Gray was of sound mind and signed the instrument of her own free will.

Servanus Neiber testified that his mother-in-law, Leola Long, was a sister of Mrs. Gray. It was Mrs. Long who petitioned for letters of administration. Mrs. Gray had lived with Mr. Neiber and his family including Mrs. Long. She lived with them from mid February to March 4, 1961 when she was hospitalized at Swedish American Hospital. After March 4, her health improved and it was said that she was happy and she expressed an interest in business matters. She was concerned about the care of her real estate, the payment of real property taxes on tax day, the amount of her bank balance and seemed to derive satisfaction from delivering checks to her nurses for their services. Neiber stated that in April of 1961, Mrs. Gray told him that she had made a will and she was unhappy about this. Thereafter Neiber went to Mr. Brown, Mrs. Gray's attorney, and made arrangements for him to call on Mrs. Gray at the hospital. After Brown's visit, Mrs. Gray again asked Neiber what to do about the will and stated, "I don't want a will." She is said to have stated that she did not want a will because her husband had not had a will. Neiber then went to his own attorney to see what could be done for Mrs. Gray. Neiber stated that his attorney suggested a letter of revocation and that he reported this to Mrs. Gray. Later, the instrument to revoke the will was prepared and read to Mrs. Gray. The next day the instrument was signed. After the revo-

cation instrument was signed, Neiber stated that Mrs. Gray smiled and said, "That's nice" and she seemed to be relieved.

Neiber was named as conservator for Mrs. Gray in April of 1961, at the suggestion of Mr. Brown, Mrs. Gray's attorney. Mr. Brown secured the appointment of the conservator for physical reasons.

Neiber stated that he knew of the provisions of Mrs. Gray's will. He stated that his wife would lose by Mrs. Gray's revocation and that his mother-in-law would benefit from the revocation but that it would make no difference to him. He also stated that attorney Brown refused to give him Mrs. Gray's will although she had requested that he get it for her.

Mr. Brown testified on behalf of the will and stated that he talked to Mrs. Gray on February 14 and March 22 and that on these occasions she gave true and correct answers. He also stated that he asked her if she wanted to change her will and she said "no." Brown stated that her mental processes were different in March than they had been in February, and stated that on March 22 she was not alert and seemed to have pain in the neck and chest. He stated that he did not have enough conversation on March 22 to form an opinion as to whether or not she was of sound mind.

F. E. Sauer, Mrs. Gray's doctor and a witness to the will, testified that Mrs. Gray's health was good in January and February except that she was grieved over the death of her husband. He stated that except for a period of one week he felt that she was always mentally competent. The doctor testified that Mrs. Gray was discharged from the hospital September 11, 1961. He attributed her condition to the loss of her husband and stated that there was nothing organically wrong.

The foregoing is essentially all of the testimony which can be said to relate in any way to the revocation instrument.

██ To sustain the order of the court, the appellee contends that Mrs. Gray was not competent at the time of the attempted revocation and that Neiber was guilty of fraud, compulsion or wrongful conduct in procuring the execution of the revocation.

We shall discuss each contention in the order raised. The appellees must necessarily admit that Mrs. Gray was competent on January 10, 1961 or the will offered and admitted must fail. Thus we need only consider evidence of Mrs. Gray's condition after the execution of the will.

Mr. Brown, Mrs. Gray's attorney, visited her in March but testified that he had no opinion as to her soundness of mind to make a will. He did state that he noticed a change in her mental condition and that she was not alert.

All other witnesses who testified were of the opinion that Mrs. Gray was of sound and disposing mind and memory. Her doctor stated that he considered her mentally competent, the nurses stated that she knew and understood her acts and executed the revocation knowingly. Mr. Neiber also stated that she was of sound mind. It is clear to this court that the trial court's finding that Mrs. Gray was not of sound mind and memory and not competent to make her will at the time of the execution of the instrument of revocation is contrary to the manifest weight of the evidence and is without evidentiary basis.

██ The law presumes every person to be sane until the contrary is proved and the burden of proving Cora Gray incapable of making a will by a preponderance of the evidence was upon the appellees. Roller v. Kurtz, 6 Ill2d 618, 129 NE2d 693. There is

not even a conflict in the evidence in the instant case. Old age and feebleness, of themselves, are not evidence of a lack of testamentary capacity. Quellmalz v. First Nat. Bank, 16 Ill2d 546, 158 NE2d 591. One who is able to transact ordinary business, to remember who are the natural objects of his bounty, to recall to mind his property, and to make a disposition of it understandingly according to some purpose or plan, is capable of making a valid will. Shelvin v. Jackson, 5 Ill2d 43, 124 NE2d 895; Forberg v. Maurer, 336 Ill 192, 168 NE 308.

In the instant case evidence shows that Cora V. Gray consulted with her attorney on tax matters and gave true and correct information. She also discussed the management of her property with Mr. Neiber and paid her nurses. Further, the evidence shows her plan to dispose of her property in the same manner as her husband had before her. "A defective memory and mental sluggishness do not render a testator incapable of making a will, unless his mind has become so impaired that he is incapable of understanding the business of making a will while he is engaged in the act." Malone v. Malone, 26 Ill App2d 291, 167 NE2d 703. Evidence of the illness of Mrs. Gray failed to show that she was incapable of understanding her acts. For all of these reasons, we are of the opinion that the evidence clearly and conclusively showed Mrs. Gray to be competent rather than incompetent to make her instrument of revocation.

To support the court's finding of fraud, compulsion or other improper conduct, the appellees suggest that an inference of fraud arises from the fact that Mr. Neiber was the conservator for Mrs. Gray and that his mother-in-law would benefit from the revocation. They also contend that fraud was shown by evidence that Mr. Neiber had read the decedent's will prior to her death. It is also contended that in-

246

asmuch as no attorney was present when the instrument of revocation was signed, this too, was evidence of fraud.

██ ██ Fraud, forgery, compulsion or other improper conduct has been held to include only evidence of some trick or device by which a person may be induced to sign a paper under the impression that it is something else or to the alteration of the will after it was signed, or the substitution of another paper for part of the will after it had been signed, and matters of like character. In re Estate of Garner, 8 Ill App2d 41, 130 NE2d 219. There is absolutely no evidence of any trick, device, substitution or alteration to secure the execution of the instrument of revocation. Fraud cannot be established on mere suspicion. It must be affirmatively proved by clear and convincing testimony. Weininger v. Metropolitan Fire Ins. Co., 359 Ill 584, 195 NE 420. Fraud is never presumed. Hardy v. Bankers Life & Cas. Co., 19 Ill App2d 75, 153 NE2d 269.

Certainly no more than a suspicion is created by the evidence offered. For these reasons the order admitting to probate the instrument purporting to be the last will and testament of Cora V. Gray is reversed and the cause is remanded to the Probate Court of Winnebago County with instructions to enter an order denying probate to the instrument purporting to be the last will of Cora V. Gray and to issue letters of administration to Leola Long according to the prayer of the petition filed by Leola Long.

Reversed and remanded with directions.

WRIGHT, P. J. and CROW, J., concur.