In the Matter of the Estate of Charles P. Riner, Deceased.

Alice Ann Taylor, et al., Petitioners-Appellants, v. Lenora Cummings, Individually and as Administrator of the Estate of Charles P. Riner, Deceased, Respondent-Appellee, Marguerite Murphy, Respondent.

Gen. No. 64–48.

Third District.

May 19, 1965.

Rehearing denied June 8, 1965.

Harper Andrews and Campbell Andrews, of Kewanee, for petitioners-appellants.

Reynolds M. Everett, of Galva, and Welch and Blachinsky, of Kewanee, for respondent-appellee.

CORYN, J.

This is an appeal from an order of the County Division of the Circuit Court of Henry County dismissing a petition for probate of the will of Charles P. Riner, deceased.

The proponents of this will, appellants herein, are nieces and nephews of the predeceased wife of the decedent, Carl P. Riner, an octogenarian who died suddenly on December 2, 1962, at Galva, Illinois. On January 9, 1963, Lenora Cummings, appellee, the sole heir-at-law of decedent, was, on her petition, appointed administrator of decedent's estate by order of the County Court of Henry County. On July 25, 1963, the appellants filed a petition for probate of the will of the decedent and alleged that said will was in the possession of Lenora Cummings, the administrator, and should be presented to the court for probate. This petition lists the appellants and one Marguerite Murphy, together with Lenora Cummings, a niece of decedent, as legatees and devisees, and

further alleges that Lenora Cummings is therein nominated as executrix, and that Carl Melin and Etta Melin of Cambridge, Illinois, were attesting witnesses thereto. Proponents' petition also prays for an order that Lenora Cummings produce said will; that it be admitted to probate; and that Dallas P. Brown of Peoples National Bank of Kewanee be appointed administrator with will annexed. By her answer to this petition, Lenora Cummings, contestant, asserted that decedent left no will, having revoked the instrument described in proponents' petition. This assertion was denied by proponents' reply.

At the hearing on the petition for probate of this will, Lenora Cummings produced the document in controversy. The proponents called the attesting witnesses, Carl Melin and Etta Melin, who testified that the will, dated August 15, 1956, was executed by the decedent, a widower, in their presence, and they attested the same at his request and in his presence and the presence of each other, and that the decedent was then of sound mind and memory, and that he did not subsequently marry.

Carl Melin further testified that he is an attorney, and that he prepared the will for the decedent at the decedent's request. He stated that he kept this will in his office in a sealed envelope until two or three years before the decedent's death, at which time the decedent came to his office and stated that he would like to have the will in his possession. The will, when so delivered to Riner, was attached to a blue cover and was in an envelope marked "Will of Charles P. Riner."

The only other witness called by proponents to testify was Mrs. Isma Johnson, who stated she had lived in Galva since 1948, and was acquainted with the decedent, having frequently visited in his home during the last years of his life. Mrs. Johnson stated that

decedent's health had been good up to the time of his death, except for the fact of a broken hip he sustained December 4, 1961, which injury required him to use a walker or wheel chair. This witness further testified that she had known Lenora Cummings since 1947, and that Miss Cummings was the niece of the decedent and had lived in decedent's home since at least 1947. Miss Cummings did all the house work, shopping, errands, and drove an automobile for the decedent. The dining room of the first floor of decedent's house had been converted as a bedroom for him since he broke his hip. Mrs. Johnson stated that Riner worked on his business papers in this room, and that he kept these papers in a bureau drawer in this room.

Mrs. Johnson testified that on December 2, 1962, the day of Riner's death, she was called by Miss Cummings to the Riner home at about 10:30 or 11 p. m. She immediately went across the street to the decedent's house and saw his body was on the floor in the living room. The doctor arrived about five minutes later, and after examination, pronounced Riner dead. Later the undertaker removed the body. Approximately one and one-half or two hours later, when Miss Cummings and Mrs. Johnson were alone in the decedent's downstairs bedroom, Miss Cummings opened one of the drawers of the bureau and removed a document which was in a torn condition. Mrs. Johnson asserted that the document removed from the drawer at this time was the same document that the proponents were attempting to have admitted as the Last Will and Testament of the decedent. On the night of decedent's death, both Mrs. Johnson and Miss Cummings examined the torn condition of the will, and Mrs. Johnson suggested that scotch tape be placed on the will to hold it together, and the will was then put back in the drawer by Miss Cummings.

The only other evidence presented by the proponents was the will itself. All parties hereto admit, and the court so found, that this document was torn lengthwise through the middle from the top to within two inches from the bottom, with a second tear extending from the bottom upwards two inches to within approximately three-fourths of an inch to the left of the first tear, leaving the two pieces connected. The upper left hand corner of the instrument was also torn off, and this corner remained attached to a blue cover bearing the legend "Last Will and Testament of Charles P. Riner."

Under the law of descent and distribution, Lenora Cummings, as niece of decedent, was the sole heir. Under the terms of the proposed will, Miss Cummings was given the entire estate except that as to one 80-acre tract she was given only a life estate with a remainder to proponents. Under the will there was also a legacy of $10,000 to one Marguerite Murphy, a friend.

No further evidence was offered by the proponents, whereupon the contestant moved to dismiss the petition for probate of this will on the ground that it had been revoked by the testator. The court allowed this motion and from this decision the proponents appeal.

■ ■ The Probate Act provides that a will may be revoked by tearing by the testator himself, or by some other person in the presence of and by the direction of the testator. Ch 3, § 46, Ill Rev Stats. Where a torn will is found among the testator's papers, the presumption is that the tearing of the will was done by the testator with the intention to revoke it. In such cases, the proponent of the will has the burden of proving not only due execution of the will, but also must rebut the presumption of revocation by proof that the will was in existence and unrevoked

at the time of the testator's death. 36 ILP, Wills, § 138.

The only evidence adduced in this case shows that two or three years before his death, the testator picked up the will from his lawyer's office. During the years that followed, testator broke his hip and was compelled to sleep and work in a first floor room of his home in Galva. The decedent conducted the operation of his farms and other businesses from this room and kept his business documents in a bureau drawer in this room. After the decedent's death, Miss Cummings, in the presence of Mrs. Johnson, opened this bureau drawer and removed therefrom the torn will. Mrs. Johnson testified that the condition of the will on the night of decedent's death was the same as when presented to the court for probate.

A similar situation arose In Re Estate of Bakhus, 410 Ill 578, where the court, at 585, 102 NE2d 818, stated:

"Proponent has argued that the will was not in the possession or control of the testator until his death, and has attempted to avoid the presumption that when the will is found in the possession and control of testator in a mutilated condition the law presumes that the mutilation was done by the testator with the requisite intention. He asserts that, the will having been kept in a drawer in the harness shop, it was not in the exclusive possession of the testator as it would have been had it been in the testator's safe in his bedroom. We do not agree with this condition, because we do not feel that the exclusive possession of the testator means that it must be kept under lock and key or in a safety deposit box. This will

appears to have been kept in a drawer where he kept other papers in connection with his business. The fact that the place where he kept the will was not as safe a place as he had available to him does not mean that the will was not in his exclusive possession and control. If the keeping of the will in the drawer rather than the safe means anything, it could easily mean that the testator, having revoked the will, thought it was no longer a valuable paper, and therefore did not keep it in his safe, but rather in a drawer in his harness shop where he could look at it and decide whether or not he wanted to make a new will. . . . The right of a person to dispose of his property by will did not always exist, but was originally created by statute. In view of the fact that a will operates contrary to the statute of descent and permits a person to dispose of his property contrary to the way the law prescribes, we believe that the proponent of a will disposing of property contrary to the statute of descent has the burden of showing the will to be validly executed and effective, and that the presumption against the validity of a will which has been mutilated should not be lightly set aside."

In this case the proposed will was presented to the court in a mutilated and torn condition. The only evidence presented indicates that the will was in this condition on the night of decedent's death, and that this will was removed from a drawer in which decedent normally kept his business papers. With this evidence it was incumbent upon the proponents of this will to rebut the presumption of revocation by establishing by competent evidence that the will was in existence and unrevoked at the time of the testator's death. This the proponents failed to do.

The fact that other persons may have had the opportunity and motive to tear this will is not sufficient to rebut the presumption of revocation. In re Estate of Marsh, 31 Ill App2d 101, 175 NE2d 633. The law will not presume fraud, commission of a crime, or compulsion. In Re Estate of Gray, 39 Ill App2d 239, 188 NE2d 379.

Under the circumstances shown by this record, we believe that the court was correct in dismissing the proponents' petition for probation of the will of Charles P. Riner, deceased, on the ground that it had been revoked.

Affirmed.

ALLOY, P. J. and STOUDER, J., concur.