13 P.3d 1231 (2000)
In the Matter of the ESTATE OF SKY DANCER, Deceased.
Laura J. Fisher, Appellee,
v.
Lawrence Barnes, Appellant.
No. 99CA0537.
Colorado Court of Appeals, Div. III.
October 12, 2000.
*1232 W. Sean Scott, Lakewood, Colorado, for Appellee.
Jack Kintzele, Denver, Colorado, for Appellant.
Opinion by Judge ROY.
In this probate proceeding, Lawrence Barnes (the legatee) appeals the trial court's order finding that Sky Dancer (the decedent) died intestate, and appointing the decedent's mother, Laura J. Fisher (the heir), as personal representative of the decedent's estate. We affirm.
The decedent died in December 1997 of gunshot wounds. The circumstances of her death prompted an investigation during which the investigating officers allegedly took into possession the original copy of a document which purported to be her last will and testament (the "Will").
Thereafter, an attorney retained to represent the estate commenced summary administration pursuant to § 15-12-1201, et seq., C.R.S.2000, which provides simplified procedures for the administration of small estates. At that time, the interested parties agreed that the decedent's testamentary intent was expressed in the "Will" which was considered to be a photocopy of the original document retained by the police. Based upon that agreement, partial distribution of the decedent's personal property was made in accordance with the terms of the "Will." However, after becoming aware of certain information developed by the police investigation suggesting that the legatee might have been involved in the decedent's death, the heir objected to any further distributions under the "Will," and none was made.
In October 1998, the heir filed a petition for adjudication of intestacy, determination of heirs, and formal appointment as personal representative of the decedent's estate. The legatee, who was living with the decedent at the time of her death and was a beneficiary under the "Will," filed an objection to the petition.
The "Will" consisted of the following photocopied documents: (1) four typewritten pages entitled "Last Will and Testament of Sky Dancer," dated September 10, 1997, to which were stapled two additional typewritten pages entitled "AFFIDAVIT," which takes the form of a notarized will attestation signed by the decedent and two witnesses and dated April 8, 1996; (2) a typewritten "Special Power of Attorney," dated April 8, 1996, and signed by the decedent and attested to by a notary public; (3) a signed typewritten statement dated August 11, 1997, in which the decedent stated that she had intentionally omitted her siblings; (4) an unsigned, typewritten document entitled "Estate Planning Worksheet" dated September 10, 1997; and (5) an unsigned, typewritten document entitled "Declaration Regarding Final Arrangements of Sky Dancer" dated September 10, 1997. In addition, the first document, which purported to be the testamentary instrument, contained incomplete portions, the end of the testamentary text was followed by a large segment of blank page, and the signatures and attestation clauses were on a page separate from any testamentary text.
The legatee argued in the trial court that the decedent died testate, conceding, however, that the "Will" was not executed pursuant to statute. The legatee maintained that the documents making up the "Will" constituted a holographic will and, in any event, when considered with certain supporting documents, were sufficient to make a determination *1233 of intestacy improper. The legatee further argued that he and the decedent had contracted a common law marriage and he was, therefore, an heir.
Following an evidentiary hearing, the trial court found or concluded that the legatee had failed to prove: (1) that he and the decedent had contracted a common law marriage; (2) that the "Will" was a holographic will; or (3) that the decedent intended the "Will" to be her last will and testament. The trial court concluded that the decedent had died intestate and appointed the heir as personal representative of the estate.

I.
At the outset, we address the legatee's first contention that the trial court erred in failing to make sufficient findings of fact, and erred in not admitting the "Will" into evidence. We disagree with the first and conclude that the "Will" was, in fact, admitted into evidence.
The trial court's order must contain findings of fact and conclusions of law sufficient to give an appellate court a clear understanding of the basis of its decision. See In re Marriage of Van Inwegen, 757 P.2d 1118 (Colo.App.1988). Based on our review of the order we conclude that the trial court's order complies with this standard.
The legatee contends that the trial court, in not admitting the "Will" into evidence, failed properly to apply CRE 1003 and CRE 1004, which concern the admissibility of duplicates and other evidence of the contents of writings, recording, and photographs.
On the contrary, the record reflects that the trial court admitted the "Will" into evidence even though there was no testimony that the original documents were unavailable. The weight to be given such evidence, however, is a matter to be determined by the trial court. See Jarnagin v. Busby, Inc., 867 P.2d 63 (Colo.App.1993).

II.
Relying upon § 15-11-503, C.R.S.2000, the legatee contends that the trial court erred in finding that the decedent died intestate. We disagree.
Traditionally, Colorado has recognized only wills that are signed and witnessed in accordance with the statute. While the statute has required more formality in the past, it currently requires that the instrument be: (1) in writing; (2) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and at the testator's direction; and (3) signed by at least two witnesses before whom the testator either signed, acknowledged the signature, or acknowledged the will. Section 15-11-502(1), C.R.S.2000. More recently, Colorado has recognized holographic wills if they are signed by the testator and material portions of the document are in the handwriting of the testator. Section 15-11-502(2), C.R.S.2000.
In 1994, the General Assembly adopted comprehensive changes to the Colorado Probate Code which brought that code into conformity with the Uniform Probate Code Article II. See Colo.Sess.Laws 1994, ch. 178, § 15-10-107, et seq.; 8 Uniform L.Annot. 79-492 (1998). As pertinent here, the adopted revisions included a new provision, effective July 1, 1995, that is now § 15-11-503, C.R.S.2000. This provision states:
Although a will was not executed in compliance with section 15-11-502, the will is treated as if it had been executed in compliance with that section if the proponent of the will establishes by clear and convincing evidence that the decedent intended the will to constitute the decedent's will.
This added section gives Colorado courts, for the first time, authority to admit to probate wills that do not comply with the formal requirements of § 15-11-502(1) and do not meet the holographic will requirements of § 15-11-502(2). The construction and application of § 15-11-503 has not previously been addressed by the appellate courts of this state and we have not located any published opinions of the appellate courts of another construing and applying that state's version of the statute.
By permitting the probate of wills which are flawed in execution, but nevertheless reflect the testator's intent, the statute comports with the underlying purposes and policies of the Colorado Probate Code to discover and make effective the intent of a *1234 decedent in the distribution of his or her property and to promote a speedy and efficient system for settling the estate. See §§ 15-10-102(2)(b) and 15-10-102(2)(c), C.R.S.2000.
Similar legislation has been in effect in the Canadian province of Manitoba, as well as South Australia, and Israel, and is consistent with the general trend of the revisions of the Uniform Probate Code to unify the law of probate and nonprobate transfers, extending to will formalities the harmless error principle that has long been applied to defective compliance with the formal requirements of nonprobate transfers. See, e.g., Annot., 19 A.L.R.2d 5 (1951) (life insurance beneficiary designations); Comment, Uniform Probate Code, § 2-503 (amended 1990), 8 Uniform L.Annot. 146-8 (1998).
The formalities associated with the execution of a will have historically served as proof of the testator's intent to dispose of property as set forth in the document, and the absence of undue influence, duress, or deceit. However, a technical failure in the execution of a will has also served to frustrate the testator's intent. In Israel and South Australia the adoption of a harmless error provision prevents unnecessary litigation by eliminating disputes about technical lapses and limits the actual dispute to the question of whether the instrument correctly expresses the testator's intent. See Law Reform Commission of British Columbia, Report on the Making and Revocation of Wills (1981); New South Wales Law Reform Commission, Wills: Execution and Revocation (1986); John H. Langbein, "Excusing Harmless Errors in the Execution of Wills: A Report on Australia's Tranquil Revolution in Probate Law," 87 Colum.L.Rev. 1 (1987).
In application, the larger the departure from prescribed, formal execution, the greater the burden on the proponent to prove by clear and convincing evidence that the instrument reflects the testator's intent. For example, while the South Australian and Israeli courts routinely excuse breaches of the attestation requirements, they have insisted that the will be in writing, and have been extremely reluctant to excuse noncompliance with the signature requirement. See Langbein, supra, at 23-29, 49-50; Estate of Hodge, 40 S.A.St.R. 398 (1986) (the testator, who had written and signed his will, did not wish to be bothered with the requirement that the will be signed by two witnesses; despite the testator's willful noncompliance with the statutory requirement, the will was held to be valid); Estate of Blakely, 32 S.A.St.R. 473 (1983) (the testator and his wife signed "mirror wills," each mistakenly signing the will of the other; the court admitted the testator's will to probate, holding that there was no reasonable doubt that the husband intended the document signed by the wife to constitute his will); Baumanis v. Praulin, 25 S.A.St.R. 423 (1980) (hospital patient asked a clergyman to draft his will and to have it typed, then asked that the clergyman have the will retyped with two minor changes; the testator died before signing the final draft; the court held that the unattested, unsigned will was not valid).
In this instance, we are not dealing with a minor deviation from the formal requisites of the preparation or execution of a will. Here, the "Will," or at least the dispositive portion of it, cannot be attributed to the decedent. It was not written by her in her own hand, it was not signed by her, and there is no evidence that she represented it to anyone, either orally or in writing, as her will. And, while there is no affirmative evidence to support the proposition here, the "Will" does not foreclose the possibility that some other person prepared or assembled the dispositive provisions of it.
There is nothing in the language of § 15-11-503, nor is there any precedent in those jurisdictions which have adopted the same or similar statutes which would even contemplate the validation of the "Will" as the last will and testament of the decedent. The statute is limited in its application to those instruments which are not executed in strict compliance with the requisites of § 15-11-502, not to those which are not executed at all.
The order is affirmed.
Judge NEY and Judge DAVIDSON concur.