In re the ESTATE OF David
SCHUMACHER, a/k/a David
Paul Schumacher, deceased.

Maria Caldwell, Petitioner–Appellant,

v.

Deborah Caldwell, Respondent–Appellee.

No. 10CA0016.

Colorado Court of Appeals,
Div. VI.

April 14, 2011.

Senn Visciano Canges Rosenstein, P.C., James S. Bailey, Denver, Colorado, for Petitioner–Appellant.

Hutchins & Associates LLC, Allen E.F. Rozansky, Denver, Colorado, for Respondent–Appellee.

Opinion by Judge MÁRQUEZ.[*]

Petitioner, Maria Caldwell, appeals the probate court's order giving testamentary effect to words crossed out on decedent's holographic will. We affirm.

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## I.  Background

On December 1, 2004, David Schumacher (decedent) executed a holographic will, which contained a clause devising shares of Meyers Land & Cattle stock to decedent's cousins, petitioner, Maria Caldwell, Cheryl Smart, and respondent, Deborah Caldwell.

On January 12, 2006, decedent met with his attorney, Michael Gilbert, to create a typed will.  In a later hearing, attorney Gilbert testified he had no specific recollection whether he saw the original will or only the photocopy.  Attorney Gilbert's copy of the will included lines crossing out the names of petitioner and Cheryl as remainder devisees of all the shares of the stock.  Attorney Gilbert testified:

> What [decedent] told me was that . . . he had prepared a holographic will and subsequent to preparing it he had decided that he did not want his . . . stock to be given to two of his three cousins . . . and those names had been crossed out on the copy of the will which I had.  [Decedent] told me that, except for those deletions, he wanted me to prepare a will that contained the same dispositive provisions as in his original will from December of 2004.

Attorney Gilbert also testified:

> I asked [decedent] about the change, why Maria and Cheryl's names had been deleted and essentially what he told me was that he felt closest to his cousin, Deborah, and he had changed his mind and he wanted the stock . . . after the death of his mother to go to Deborah alone.

However, attorney Gilbert did not ask decedent who made the cross-outs.

Attorney Gilbert then drafted a typed will pursuant to decedent's instructions and transmitted it to decedent.  Decedent died on July 3, 2007 without ever executing the typed will.  After decedent's death, attorney Gilbert tendered the copy of the holographic will to the probate court.

Approximately six months prior to his death, decedent had sent several boxes of his

§ 24–51–1105, C.R.S.2010.

personal records to his secretary with instructions that she store them in her garage and sort them out. When decedent died, decedent's secretary, her sister, and decedent's personal representative found, in an unopened box, the original holographic will signed by decedent and containing the lines crossing out the names of Maria and Cheryl as devisees of the stock. The personal representative took the original holographic will to attorney Gilbert, who tendered it to the probate court.

On April 14, 2008, the personal representative filed a petition for determination of validity of decedent's holographic will dated December 1, 2004. Petitioner and Cheryl later filed a petition for construction of the holographic will to determine the validity of the markings on the will.

The probate court held a hearing in June 2009 in which attorney Gilbert and a handwriting expert testified. The probate court later issued a written order, finding that decedent performed a "revocatory act" on the will by crossing out petitioner's and Cheryl's names, with the intent and for the purpose of revoking part of his holographic will. The court ordered that "the strikethroughs in the Holographic Will . . . can and must be given effect in probate."

Both Cheryl and Maria appealed the probate court's order. However, Cheryl's appeal was dismissed, and Maria remains as the sole petitioner. Petitioner does not challenge the validity of the will without the cross-outs, but contends that the probate court erred in giving testamentary effect to the cross-outs when it probated the will.

## II.  Standard of Review

"Decisions of a trial court regarding factual disputes are accorded great deference, and, therefore, a reviewing court applies the clear error standard." *Quintana v. City of Westminster,* 56 P.3d 1193, 1196 (Colo.App. 2002). Therefore, "we will not disturb the trial court's determinations of factual questions that are necessary to carrying out the testator's expressed intent unless they are clearly erroneous." *In re Estate of Shuler,* 981 P.2d 1109, 1117 (Colo.App.1999). Clearly erroneous means the findings of fact are unsupported by substantial evidence in the record considered as a whole. *In re Estate of Perry,* 33 P.3d 1235, 1237 (Colo.App.2001).

## III.  Discussion

### A.  Sufficiency of the Evidence

On appeal, petitioner contends that (1) the evidence contradicts and does not support a finding that decedent made the cross-outs and (2) there is no evidence to support the finding that decedent made the cross-outs with the intent and purpose to revoke the devise as required under section 15–11–507, C.R.S.2010. We disagree.

■ "A will can be revoked only in the manner provided by statute, and the statutory provisions for revocation of wills must be strictly construed." *In re Estate of Haurin,* 43 Colo.App. 296, 297, 605 P.2d 65, 66 (1979) (citing *In re Grisell's Estate,* 176 Kan. 209, 270 P.2d 285 (1954)).

Prior to 1995, section 15–11–507 only allowed for total revocation of a will. *See* Ch. 451, sec. 1, § 153–2–507, 1973 Colo. Sess. Laws 1556 (subsequently codified at § 15–11–507, until repeal effective July 1, 1995). However, the General Assembly revised the statute to allow part of a will to be revoked if certain formalities have been satisfied. Accordingly, now, under C.R.S. 15–11–507(1), C.R.S.2010:

A will or any part thereof is revoked:

. . .

(b) By performing a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will or part of it or if another individual performed the act in the testator's conscious presence and by the testator's direction. For purposes of this paragraph (b), "revocatory act on the will" includes burning, tearing, canceling, obliterating, or destroying the will or any part of it.

Here, the probate court found that decedent made the cross-outs with the intent and purpose to effectuate a partial revocation of the devise of the stock to petitioner and Cheryl. It based its decision primarily upon the testimony and affidavit of attorney Gilbert, who was "certain in [his] mind that the

cross-outs that appear on the machine copy were cross-outs that [decedent] wanted changed in his will." Additionally, attorney Gilbert "was aware that [the will] was the most recent expression of [decedent's] testamentary intent" and the attorney "was very clear in [his] understanding that that's what decedent wanted. That change was from what he had originally stated in his holographic will." The court concluded that the intent was clearly and convincingly proved through the affidavit and testimony of attorney Gilbert, and found that decedent "was still in possession and/or control of the will because he employed the secretary."

Petitioner's expert handwriting analyst, whose testimony was based on a comparison of the photocopy of the will and the original, opined that "it was not possible to determine who wrote the cross-outs" on the will. To this, the court stated:

> This would be significant if the issue[s] confronting the Court included who had made the strikethroughs. Attorney Gilbert's testimony was unequivocal that the Decedent told him that he (the Decedent) had crossed out the ... names with the intent and purpose of removing them from the provision of the ... Will.

### 1. Performance of Act

Petitioner contends, and we agree, that the following findings by the probate court, insofar as they state that decedent told attorney Gilbert that he had made the cross-outs, are contrary to the evidence at trial:

> Attorney Gilbert's testimony was unequivocal that the Decedent told him that he (the decedent) had crossed out the Petitioners' names with the intent and purpose of removing them from the provisions of the [will] regarding the [stock]. This testimony is persuasive that the strikethroughs were made by the Decedent and were made with the intent that the Holographic will be amended accordingly.

> [T]he Decedent drew attorney Gilbert's attention to the crossed out names of Caldwell and Smart and told attorney Gilbert that he specifically had revoked the devise of the shares of Caldwell and Smart....

> Decedent signed the Holographic Will and he specifically stated to attorney Gilbert both that the document was his will and also that, by his strikethroughs, he was omitting the specific devises to Caldwell and Smart otherwise provided for in his will....

> [A]ccording to attorney Gilbert, the Decedent told [him] that he had crossed out Petitioners' names because he did not want the shares of the Meyers Land & Cattle stock to go to Petitioners.

The record reflects that decedent did not tell attorney Gilbert that he made the cross-outs. Rather, when asked if decedent conveyed at any point that he physically made the cross-outs, attorney Gilbert testified, "[I]f he did, I have no specific recollection of him telling me that." Additionally, attorney Gilbert volunteered that he and decedent "never discussed" whether decedent personally performed the cross-outs or if anyone else did so at his direction.

■ However, because other evidence supports the probate court's conclusion that decedent made the cross-outs, we disagree with petitioner that the probate court's order must be reversed. *See Wagner v. Hilkey,* 914 P.2d 460, 462 (Colo.App.1995) ("A correct judgment will not be disturbed on review, even if our analysis differs from that of the trial court."), *aff'd sub nom. Wagner v. Bd. of County Comm'rs,* 933 P.2d 1311 (Colo.1997); *LaFond v. Basham,* 683 P.2d 367, 369–70 (Colo.App.1984) (appellate court "will not disturb the trial court's decision merely because it assigned one incorrect reason for it").

■ As noted, section 15–11–507(1)(b) provides that a revocatory act on a will includes burning, tearing, canceling, obliterating, or destroying the will or any part of it. Canceling a part of a will can be accomplished "by drawing lines through one or more words of the will." *See 2 Page on Wills* § 21.8 n. 8 (2003) (citing *In re Estate of Glass,* 14 Colo. App. 377, 60 P. 186 (1900)).

Attorney Gilbert testified that when decedent visited him, decedent showed him the cross-outs on a copy of the holographic will and told attorney Gilbert he did not want his "stock to be given to two of his three cous-

ins" and "those names had been crossed out on the copy of the will which [attorney Gilbert] had." Attorney Gilbert also testified that he "was certainly aware that [decedent] had changed his mind and he decided he wanted the stock to just go to his cousin, Deborah." Decedent told him that "except for those deletions," decedent wanted him to prepare a will that contained the same dispositive provisions as his original will. Decedent also responded to attorney Gilbert's question "about the change, why Maria and Cheryl's names had been deleted." That testimony, together with the evidence, as discussed below, that the original will with the crossed-out portions was found in decedent's possession, is sufficient evidence to demonstrate that decedent made the cross-outs.

## 2. Possession

As for respondent's assertion that the probate court's finding that decedent was in possession of the will upon his death created a presumption that he made the cross-outs, petitioner contends the court never addressed the presumption, and therefore we may not address it on appeal. We are not persuaded.

■ Contrary to petitioner's contention, the record supports an inference that the probate court addressed the presumption issue. At the revocation hearing, respondent's attorney argued that because the will was in decedent's possession, a presumption arose that he made the cross-outs. In its final order, the court found that the will was in decedent's possession, but did not specifically address how this affected the presumption. However, based on the attorney's argument, we can reasonably infer that the court's finding that the will was in decedent's possession at the time of his death was in response to counsel's presumption argument.

■ In any event, when a trial court finds the predicate facts, such as possession, the law will allow a presumption to arise from those facts, and that presumption may serve as the basis for judgment. *Murray v. Montgomery Ward Life Ins. Co.,* 196 Colo. 225, 228–29, 584 P.2d 78, 81 (1978) ("a litigant may establish certain underlying facts and the law will allow a presumption to arise

from those facts" "upon which judgment may be rendered in the absence of contrary evidence"). Therefore, we may address it on appeal.

Neither petitioner nor respondent disputes that if a properly executed will containing tears or cancellations is known to be in the possession of the testator at the time of death, the testator is presumed to have revoked all or some of it. *See* CJI–Civ. 4th 34:9 (2011) (if a testator's will is found in his or her possession upon death with tears or cancellations, the law presumes that he or she did such act with the intent to revoke part or all of the will) (citing *In re Estate of Tong,* 619 P.2d 91, 92 (Colo.App.1980), and 3 W. Page, *Wills* § 29.140 (W. Bowe & D. Parker eds., rev. ed. 1961) (application of presumption where will is torn, cancelled, etc.)). Rather, what is contested is whether the original holographic will was in fact in decedent's possession upon his death.

■ Here, the probate court found that the will was in decedent's possession when it was at his secretary's house "because he employed the secretary." Petitioner, however, contends that the decedent must have been in *exclusive* possession of the will for the presumption to apply, and because the will was found at decedent's secretary's house, it was not in his exclusive possession. We conclude petitioner views possession too narrowly.

Petitioner does not point to any statutory provision that requires a showing of exclusive possession. However, petitioner cites *Hoff v. Armbruster,* 122 Colo. 563, 226 P.2d 312 (1950), which held:

In this cause the evidence clearly shows that the will, probate of which is sought, was last seen in the *exclusive* possession and control of decedent. Upon [decedent's] death, and after thorough search, it could not be found. Under such circumstances the law presumes that the maker of the will destroyed it with intent to revoke.

*Id.* at 568, 226 P.2d at 314 (emphasis added). In our view, petitioner misconstrues the rule articulated in *Hoff.* While the court noted the factual circumstance of exclusive possession,

it did not explain whether possession and control must be exclusive or what exclusive possession and control meant. According to the court, under such circumstances, the presumption of possession applies. Later in the opinion, in citing the "well-established rule," the *Hoff* court stated: "Where a will which cannot be found following the death of the testator is shown to have been in his *possession* when last seen, the presumption is, in the absence of other evidence, that he destroyed it animo revocandi." *Hoff*, 122 Colo. at 568, 226 P.2d at 314 (emphasis added) (quoting 57 Am.Jur. *Wills* § 549).

Petitioner also relies on CJI–Civ. 34:9 for the proposition that the will must have been in decedent's exclusive possession for the presumption to apply. However, neither the instructions nor the notes on use contain any reference to exclusivity.

Furthermore, the other Colorado cases addressing the last known possession of a missing will have not used the word "exclusive." *See In re Estate of Eder*, 94 Colo. 173, 185, 29 P.2d 631, 636 (1934) (recognizing "universal" presumption that a will last seen in testator's possession is presumed revoked); *Perry*, 33 P.3d at 1236 ("[A]t common law, when a will last seen in possession of the decedent cannot be found following the decedent's death, there is a rebuttable presumption that the decedent destroyed the will with intent to revoke it."); *Tong*, 619 P.2d at 92 ("[A] testator's cancellation of a duplicate original or fully executed carbon copy of a will which is in the testator's possession at his death raises a presumption that the testator intended to cancel the other duplicate original or the original will in the possession of another."); *In re Estate of Enz*, 33 Colo. App. 24, 29, 515 P.2d 1133, 1136 (1973) ("When a will, last seen in the possession of the testatrix, cannot be found following her death there is a presumption that the testatrix destroyed the will with the intent to revoke it."). Thus, we conclude the will need only be found in testator's possession upon death.

In addition, the evidence necessary to find possession is contingent on the factual circumstances of each case. While Colorado common law has not expressed a standard for probate courts to apply when determining possession, courts outside of Colorado that have addressed the presumption have held that "[w]hat is necessary to show possession [of a will at the time of decedent's death] turns on the facts of each case." *In re Estate of Deskins*, 128 Ill.App.3d 942, 84 Ill.Dec. 252, 471 N.E.2d 1018, 1023 (1984); *see In re Bakhaus' Estate*, 410 Ill. 578, 102 N.E.2d 818, 822 (1951) (possession does not require that the will be kept "under lock and key or in a safety deposit box"); *see also In re Kemper's Estate*, 157 Kan. 727, 145 P.2d 103, 110 (1944) (decedent's will with crossouts in attorney's files at time of death was held to be in decedent's possession); 79 Am. Jur.2d *Wills* § 571 (the "presumption ... is not dependent upon proof that the will was in any particular place," but upon whether the factual circumstances sufficiently prove that the decedent had possession of the will).

Cases in other jurisdictions also illustrate what evidence has been sufficient to find possession. *See, e.g., Goriczynski v. Poston*, 248 Va. 271, 448 S.E.2d 423, 426 (1994) (court gave effect to lines drawn through a will as a partial revocation because the will was found among testator's effects upon death); *Bakhaus*, 102 N.E.2d at 822 (will, kept in the testator's harness drawer among other business papers, found to be in testator's possession).

■ Moreover, even when others have had access to the will, "the law will not presume fraud, commission of a crime or compulsion." *In re Riner's Estate*, 59 Ill.App.2d 434, 207 N.E.2d 487, 490 (1965). Thus, the presumption is not overcome when other persons who had access to the will, who may have had a motive or an opportunity to perform the revocatory act, did not know of its existence or would not benefit from the revocation. *Id.; see, e.g., In re Hildebrand's Estate*, 365 Pa. 551, 76 A.2d 202, 204 (1950) (evidence that beneficiary had access to safe deposit box with will in it, but did not know it was in the box, did not overcome presumption of possession).

Accordingly, we will not disturb the court's finding of possession unless it is clearly erroneous. *Shuler*, 981 P.2d at 1117. It is the function of the trial court, and not the appel-

late court, to weigh the factual evidence, and we will not substitute our own judgment for the trial court's, but rather "defer to a trial court's reasonable inferences drawn from such facts." *Perry,* 33 P.3d at 1237 (citing *Associates of San Lazaro v. San Lazaro Park Properties,* 864 P.2d 111 (Colo.1993)).

In this case, we conclude that the probate court's finding that decedent had been in possession of his will upon death is supported by the record and is not clearly erroneous. The record contains evidence that decedent had given the boxes of his own effects to his secretary to organize and keep on his behalf, and the will was found among many of his other personal items. Unbeknownst to the secretary, the boxed items included the will. There is no evidence that anyone but the secretary, her sister, and the personal representative had access to the will. Additionally, none of them benefited under the will, and all three signed affidavits averring that at no point did they alter the will. Thus, the record supports the court's finding that it was in decedent's possession upon death.

■ The probate court also properly concluded that "decedent hired the secretary and as such, the [d]ecedent was still in possession and/or control of the will because he employed the secretary." An employee acts on behalf of his or her employer when the employee is acting within the scope of his or her employment. *See Raleigh v. Performance Plumbing & Heating,* 130 P.3d 1011, 1019 (Colo.2006). Here, the probate court determined the secretary stored decedent's effects based on his instructions and her position as his employee, and because the question whether an employee is acting within the scope of the employment is a question of fact for the trial court, we must accept its determination. *Id.*

Based on the facts of this case, we are satisfied that the probate court did not err in finding the will was still in decedent's possession upon his death. Accordingly, any error in the court's finding that decedent told attorney Gilbert he made the cross-outs is harmless in light of other evidence and the court's finding concerning possession.

### 3. Intent and Purpose

Petitioner also contends that there is no evidence to prove that decedent made the cross-outs with the intent and purpose to revoke the devise of stocks to her. We disagree.

■ Extrinsic evidence is admissible to establish the testator's intent. *See In re Estate of Wiltfong,* 148 P.3d 465, 469 (Colo.App. 2006); *see also* § 15–11–502(3), C.R.S.2010 ("Intent that the document constitutes the testator's will can be established by extrinsic evidence, including, for holographic wills, portions of the document that are not in the testator's handwriting.").

■ Here, the court determined that clear and convincing evidence established decedent's intent and purpose to revoke the devise of stock through the cross-outs. The court's determination was based on attorney Gilbert's testimony. Decedent had told him that he decided "he did not want his ... stock to be given to two of his three cousins," "those names had been crossed out on the copy of the will" that decedent had given to attorney Gilbert, and "he felt closest to his cousin Deborah." Additionally, attorney Gilbert testified that "he was certainly aware that [decedent] had changed his mind and he had decided that he wanted the stock to go just to his cousin, Deborah."

We conclude that the court's finding is adequately supported by sufficient evidence in the record. The court's finding that decedent was in possession of the will at the time of his death also establishes a presumption the he made the cross-outs with the intent and purpose of partial revocation. *See Tong,* 619 P.2d at 92; CJI–Civ. 4th 34:9.

We also reject petitioner's contention that the totality of the evidence demonstrates that the "cross-outs were so that [attorney] Gilbert could draft a new will." Petitioner cites the lack of a signature by the cross-outs as evidence that decedent did not intend the partial revocation to be final. However, it was the court's prerogative to give the most weight to attorney Gilbert's testimony that the cross-outs represented decedent's then current intent and purpose to revoke that portion of his will, and we will not disturb

that choice on appeal. See *In re Estate of Breeden v. Gelfond*, 87 P.3d 167, 172 (Colo. App.2003) ("It is for the trial court, as trier of fact, ... to assess the credibility of witnesses."); *see also In re Estate of Romero*, 126 P.3d 228, 231 (Colo.App.2005) ("Evaluation of the credibility of witnesses, including expert witnesses, is a matter solely within the fact finding province of the trial court, and we will not reweigh testimony or reevaluate evidence on appeal.").

Because both elements of partial revocation as required by section 15–11–507 have been met and are adequately supported by the record, the probate court's decision to give the cross-outs testamentary effect was not erroneous.

### B. Section 15–11–503

Petitioner contends that the probate court erred in applying section 15–11–503, C.R.S. 2010, because (1) the changes were not signed by decedent as his will and (2) there is no showing "by clear and convincing evidence" that decedent intended the cross-outs to be a partial revocation of his will. We perceive no reversible error.

Section 15–11–502, C.R.S.2010, sets forth the formalities when executing a document as a will. Section 15–11–503 "governs how potential donative documents are treated when they have not been executed pursuant to the ... requirements [of] [section] 15–11–502(1)." *Wiltfong*, 148 P.3d at 467. Section 15–11–503(1) and (2), C.R.S.2010, state:

(1) Although a document, or writing added upon a document, was not executed in compliance with section 15–11–502, the document or writing is treated as if it had been executed in compliance with that section if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute:

. . .

(b) A partial or complete revocation of the will.

. . .

(2) Subsection (1) of this section shall apply only if the document is signed or acknowledged by the decedent as his or her will. . . .

The purpose of section 15–11–503 is to give probate courts a mechanism to cure minor errors in the formal requirements of will execution established by section 15–11–502. *Wiltfong*, 148 P.3d at 468; *see In re Estate of Sky Dancer*, 13 P.3d 1231, 1234 (Colo.App. 2000).

Here, petitioner is not challenging the probate of the entire holographic will, but rather only whether the cross-outs should be given testamentary effect. And, as stated above, the court correctly found attorney Gilbert's testimony to be clear and convincing evidence of decedent's intent to revoke part of his will. Petitioner argues that there is no signature by the cross-outs, but does not explain how the lack of a signature fails to comply with section 15–11–502, and to the extent she broadly contends that the will fails to comply with statutory formalities and therefore the cross-outs should not be entitled to probate, she does not identify the formalities to which she is referring.

Section 15–11–503(1) permits courts to probate wills and documents that are not in compliance with section 15–11–502 so long as the testator's intent has been proved through clear and convincing evidence. Although section 15–11–503(2) requires that the document be signed by the testator as his or her will in order for the document to be probated, we find nothing in section 15–11–502 or section 15–11–503(2) that requires a signature by a cross-out in order to effectuate a partial revocation. Rather, the statutes require that the document be acknowledged or signed by the testator as his or her will, but not that a revocation have an additional acknowledgement or signature.

In addition, section 15–11–507, which governs the formalities of an effective partial revocation, does not require additional signatures. Therefore, we cannot see how the probate court's citation to section 15–11–503

here requires reversal, and thus, we uphold the probate of the will.

### IV. Attorney Fees

Respondent moved for sanctions and attorney fees under C.A.R. 38(d) and section 13–17–102, C.R.S.2010, arguing that petitioner's brief lacked substantial justification. Because we have determined that a portion of the court's findings was unsupported by the evidence, we do not impose attorney fees or sanctions.

The order is affirmed.

Judge HAWTHORNE and Judge ROMÁN concur.